GULF INSURANCE CO., Appellant

v.

Chad HENNINGS, Appellee.

No. 10–06–00192–CV.

Court of Appeals of Texas,
Waco.

Jan. 30, 2008.

Barry Hasten, Hasten & Hansen, Arlington, TX, for Appellant.

John E. Collins, Burleson Pate & Gibson LLP, Dallas, TX, for Appellee.

Before Justice VANCE and Justice REYNA.*

---

* We issue this opinion with only two justices participating because of Chief Justice Gray's recusal. An explanation is in order.

This appeal was submitted without argument on March 7, 2007. We issued an opinion (now withdrawn) on July 11, 2007. Hennings filed a motion for rehearing, and we requested a response, which Gulf filed.

This Court's "Procedures for Internal Deadlines for Approval of Opinions and Orders," which sets deadlines for the approval or nonapproval of the opinions and orders that the

## OPINION

BILL VANCE, Justice.

This is a workers' compensation case of first impression involving a professional athlete as defined in the Texas Labor Code.[1] Finding no error, we will affirm the trial court's judgment awarding workers' compensation benefits.

## I. Background

The facts are largely undisputed. Chad Hennings was a defensive lineman for the Dallas Cowboys Football Club, Ltd. (Cowboys), a National Football League (NFL) franchise, from 1992 through March of 2001. In October 2000, he suffered a neck injury during a game. Dr. Andrew Dossett and Dr. Dan Cooper, the team physicians, evaluated the injury and, following several MRI exams, concluded that Hennings had sustained an injury to his spinal cord at the C3–4 level. Hennings's cervical disc at that level had degenerated and was pressing on his spinal cord. In November 2000, he underwent surgery for cervical fusion at the C3–4 level. Hennings had to wear a neck brace for six weeks and was unable to play for the remainder of the season. After Hennings's injury, the Cowboys continued to pay his bi-weekly salary of $52,352.94.

The Cowboys notified the NFL that Hennings was on the injured-reserve list as of November 8, 2000, and estimated that it would take six months for him to regain "game condition." That estimate was certified by Dr. Cooper. In January of 2001, Hennings began rehabilitation and working out in the team's weight room.

---

Court issues, specifies that an opinion issued after a motion for rehearing is filed will be issued on the first Wednesday after 30 days after the date it is distributed by the author to the remaining justices. If a reviewing justice does not indicate an intent to concur or dissent by two weeks prior to the issue date or having so indicated does not distribute a proposed concurring or dissenting opinion by one week prior to the issue date, then that justice is deemed to have approved the draft opinion. *See Tex. A & M Univ. v. Bading,* 236 S.W.3d 801, 809 (Tex.App.-Waco 2007, pet. filed) (op. on reh'g); *see also Tesmec USA, Inc. v. Whittington,* 192 S.W.3d 178, 183–88 (Tex.App.-Waco 2006, pet. denied) (per curiam) (op. on reh'g). This Court's internal deadline procedures were designed in part to implement that portion of the Texas Standards for Appellate Conduct which provides, "The court will endeavor to avoid the injustice that can result from delay after submission of a case." Tex. Standards of App. Conduct, The Court's Relationship with Counsel No. 5, *reprinted with* Tex.R.App. P. (Vernon Supp.2007).

The pertinent draft of the proposed opinion in this cause was furnished to Chief Justice Gray on December 11, 2007. He noted "intend to concur or dissent" on December 27, 2007; however, no proposed concurring or dissenting opinion was distributed by the specified date, January 9, 2008.

Sometime between December 27, 2007 and January 9, 2008, Chief Justice Gray requested that he be shown as "not participating" in this decision. This was an unexplained reversal of his prior stance on the issue of whether all three justices must participate in a decision. *See Tesmec USA,* 192 S.W.3d at 181 (Gray, C.J., dissenting on reh'g) ("I do not believe I have the option to 'not participate' in casting a vote on a judgment disposing of an appeal. I believe it is my ethical duty to participate.") (citation omitted). Consistent with this Court's internal deadline procedures, Chief Justice Gray was deemed to have approved the Court's opinion on January 9. *See Bading,* 236 S.W.3d at 811. Thus, we respectfully declined his request to be shown "not participating." Thereafter, Chief Justice Gray recused himself.

Therefore, in order "to expedite a decision," we invoke Rule of Appellate Procedure 2, to the extent necessary, to suspend Rule 41.1(a)'s possible application and to issue this opinion with two justices participating. Tex. R.App P. 2.

1. The Labor Code's provisions governing workers' compensation is commonly called the Workers' Compensation Act and will be referred to in this opinion as "the Act."

On March 7, 2001, the Cowboys terminated Hennings's contract and issued a "Notice of Termination" form letter to the NFL, checking off that the termination reason was that Hennings's "skill or performance [had] been unsatisfactory as compared to that of other players competing for positions on the Club's roster."

After termination, but because he was severely injured and was terminated while injured or rehabilitating from an injury, Hennings received a $225,000 payment as provided by the "injury-protection clause" of the NFL's Collective Bargaining Agreement.[2] He also received $87,500 in severance pay that was unrelated to his injury and was based on his years in the league. Although the Cowboys had paid his medical expenses for the neck injury in the total amount of $38,921.98, all medical benefits under the contract ceased when the contract terminated.

After consultation with his doctor and family, Hennings decided to retire in June 2001. He testified that he was not prohibited from playing in the NFL but chose not to return to play because of the injury risk. He continued working with a physical therapist for eight weeks after he was released from Dr. Dossett's care upon his retirement. At the time of trial, Hennings had not seen a doctor in two years.

### A. Workers' Compensation Proceedings

Believing that he was entitled to benefits under the Act, Hennings filed an application for workers' compensation benefits with Gulf Insurance Company, the Cowboys' workers' compensation insurance carrier. In a contested case hearing before an administrative judge, it was stipulated that Hennings sustained an injury in the course and scope of his employment and that the Cowboys continued to pay Hennings his contractual salary.

The administrative judge determined that Hennings was not barred from pursuing workers' compensation benefits because his employment medical benefits were not equal to or greater than the benefits under the Act, his medical benefits having expired when the Cowboys terminated his contract.[3] Thus, Hennings would be entitled to reasonable medical benefits under the Act "as and when needed." The administrative judge also determined that Hennings's disability period was from March 7, 2001 through April 17, 2001. Gulf was ordered to pay income and medical benefits to Hennings.

Gulf appealed the administrative judge's decision to a Texas Workers' Compensation Commission appeals panel, which affirmed the administrative judge's decision with the same rationale. Hennings appealed the disability period finding, but the panel affirmed that decision as well.

### B. District Court Review

Gulf filed suit in district court, seeking judicial review of the panel's decision. Hennings testified that his primary motive in seeking workers' compensation benefits was to obtain future medical benefits. A jury found that the benefits available under his employment contract were not equal to or greater than the benefits available under the Act and that Hennings was disabled as the result of a compensable injury. Judgment was entered on the verdict, including an award of temporary weekly income benefits of $533 for fifteen weeks and attorney's fees.

---

**2.** We will hereafter refer to the contract of employment and the CBA collectively as his "employment contract."

**3.** The judge also found that Hennings's income under his employment was higher than income benefits available under the Act.

Gulf now appeals that judgment, and Hennings appeals the portion of the judgment limiting his temporary income benefits to fifteen weeks.

## II. Professional Athletes and Workers' Compensation

Texas workers' compensation law treats professional athletes [4] as a distinct class of employees. Section 406.095 of the Act provides:

(a) A professional athlete employed under a contract for hire or a collective bargaining agreement who is entitled to benefits for medical care *and* weekly benefits *that are equal to or greater* than the benefits provided under this subtitle *may not* receive benefits under this subtitle *and* the equivalent benefits under the contract or collective bargaining agreement. An athlete covered by *such* a contract or agreement who sustains an injury in the course and scope of the athlete's employment shall elect to receive either the benefits available under this subtitle or the benefits under the contract or agreement.

(b) The commissioner by rule shall establish the procedures and requirements for an election under this section.

Tex. Lab.Code Ann. § 406.095 (Vernon 2006) (emphases added).

The Texas Department of Insurance, Division of Workers' Compensation, adopted Rules 112.401 and 112.402 to implement section 406.095. Rule 112.401(a) provides:

(a) A professional athlete employed by a franchise with workers' compensation insurance coverage *and subject to the Texas Labor Code, § 406.095,* shall elect to receive either the benefits available

under the Act or the equivalent benefits available under the athlete's contract or collective bargaining agreement. The election shall be made not later than the 15th day after the athlete sustains an injury in the course and scope of employment. If the athlete fails to make an election, the athlete will be presumed to have elected the option which provides the highest benefits.

28 Tex. Admin. Code § 112.401(a) (emphasis added).

Rule 112.402 provides in pertinent part:

(a) Medical care available to a professional athlete subject to the Texas Workers' Compensation Act (the Act), Texas Labor Code, § 406.095, is equal to or greater than medical benefits under the Act if:

(1) the athlete is entitled to all health care reasonably required by the nature of the work-related injury as and when needed, including all health care that:

(A) cures or relieves the effects naturally resulting from the work-related injury;

(B) promotes recovery; or

(C) enhances the ability of the employee to return to or retain employment; *and*

(2) *the employer's liability for health care is not limited or terminated in any way by the contract or collective bargaining agreement.*

(b) When the athlete is not eligible for lifetime income benefits or when the athletes legal beneficiaries are not eligible for death benefits under the Act, weekly benefits available to a professional athlete subject to the Act, § 406.095,

---

4. *See* Tex. Lab.Code Ann. § 406.095(c) (Vernon 2006) (defining professional athlete as a person employed as a professional athlete by a franchise of the National Football League; the National Basketball Association; the American League of Professional Baseball Clubs; the National League of Professional Baseball Clubs; the International Hockey League; the National Hockey League; or the Central Hockey League).

are equal to or greater than the income benefits provided under the Act if the total amount of the payments provided for in the contract or collective bargaining agreement is equal to or greater than the maximum weekly benefit available under the Act multiplied by 104.

28 Tex. Admin. Code § 112.402(a), (b) (emphasis added).

Hennings says that he was not required to elect which benefits to choose because, as a matter of law considering Rule 112.402(a)(2), his medical benefits under his employment contract, which terminated, did not exceed the lifetime medical benefits available under the Act.

Gulf, on the other hand, argues that the two types of benefits—medical and income—must be compared together, "not piecemeal." It says that the trial court erred, as a matter of law, in determining that Hennings was eligible to receive the benefits under his employment contract *and* the Act because his salary income so greatly exceeded workers' compensation income benefits.

Thus, we must determine whether the two types of benefits—income and medical—must be considered together or may be considered separately.

### III. Review of the Judgment

We turn to our review of the trial court's judgment.

*A. The Court's Charge*

Question 1 in the court's charge asked the following:

1. Do you find from a preponderance of the evidence that the benefits available to Chad Hennings under his contract and collective bargaining agreement post injury were equal to or greater

than the benefits available to him under the workers compensation act?

You are instructed that medical care available to a professional athlete subject to the act is equal to or greater than medical benefits under the act if:

(1) the athlete is entitled to all health care reasonably required by the nature of the work-related injury as and when needed, including all health care that:

(A) cures or relieves the effects naturally resulting from the work-related injury;

(B) promotes recovery; or

(C) enhances the ability of the employee to return to or retain employment; and

(2) the employer's liability for health care is not limited or terminated in any way by the contract or collective bargaining agreement.

You are further instructed that when the athlete is not eligible for lifetime income benefits, weekly benefits available to a professional athlete subject to the act are equal to or greater than the income benefits provided under the act if the total amount of the payments provided for in the contract or collective bargaining agreement is equal to or greater than the maximum weekly benefit available under the act multiplied by 104.[5]

Answer yes or no.

The jury answered "No"; that is, the benefits under Hennings's employment contract were not equal to or greater than the benefits available to him under the Act.

Gulf filed a motion for new trial that:

---

**5.** These instructions essentially track Rule 112.402(a-b).

- challenged the legal and factual sufficiency of the evidence to support the jury's answer to Question 1 and asserted that the jury's answer was "against the overwhelming weight of evidence";
- argued that under section 406.095, Hennings had made a *de facto* election of his contract and CBA benefits;
- argued that the income and medical benefits that Hennings received under his contract and the CBA greatly exceeded what he could have received under the Act (104 weeks of income benefits at $533 per week); and
- argued that section 406.095 prohibits professional athletes from receiving both contract and CBA benefits and workers' compensation benefits.

### B. Issue on Appeal

Gulf's first issue states: "Whether the Texas Workers' Compensation Appeals Panel and the Trial Court committed reversible error in determining the "highest benefits" available to Hennings were those provided by the Texas Labor Code and not the benefits provided by Hennings' Contract and Collective Bargaining Agreement, and in denying Appellant's Motion for New Trial. Additionally, that the great weight and preponderance of the evidence is against the finding of the jury as to Special Issue No. 1." We view this issue as two separate complaints: (1) as a matter of law, benefits under the employment contract exceeded those available under the Act; and (2) the evidence was factually insufficient to support the jury's finding.

### C. Preservation

■ Hennings argues that because Gulf did not object to Question 1 and did not move for a directed verdict, for JNOV, or to disregard the jury's answer to Question 1, it has not preserved its first issue. Hennings is partially correct in that, by Gulf's failure to object to Question 1, appellate review is limited to the law as stated in Question 1. *See Minnesota Life Ins. Co. v. Vasquez,* 192 S.W.3d 774, 778 (Tex.2006); *see also Southwestern Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 618–19 (Tex.2004) ("In assessing the evidence, we assume that the portions of the charge just quoted, because they were given without objection, correctly state the law."); *Edward D. Jones & Co. v. Fletcher,* 975 S.W.2d 539, 543 (Tex.1998) (holding that legal insufficiency no-duty complaint preserved without objection to charge).

■ While the technically preferable motion to attack the verdict on the ground that the employment contract provided the highest benefits available to Hennings as a matter of law would have been either a motion for JNOV or a motion to disregard the answer to Question 1, we find that Gulf's motion for new trial preserved the first contention in this issue (which we construe as a reassertion of the third point in its motion for new trial) for appellate review.[6] *See Doctor v. Pardue,* 186 S.W.3d 4, 15–16 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (substance of motion is not determined solely from its caption or introduction, but instead is gleaned from body of motion and prayer for relief); TEX.R. CIV. P. 324(b).

### D. Factual Sufficiency Issue

We first address the second contention of issue one, basing our review on the law set forth in the unobjected-to charge.

■ Question 1 presented the controlling issue—which option provided Hennings the highest benefits: (1) his employ-

---

6. The remedy is, however, limited to a remand for a new trial. *See Horrocks v. Texas* *Dep't Transp.,* 852 S.W.2d 498, 499 (Tex. 1993).

ment contract with the Cowboys and the NFL's CBA, or (2) the Workers' Compensation Act.

Question 1 did not instruct the jury to lump together both sets of benefits to determine if Hennings's employment benefits were equal to or greater than benefits under the Act. Rather, it gave separate instructions about when medical benefits from the athlete's employment are equal to or greater than medical benefits under the Act and about when income benefits from the athlete's employment are equal to or greater than income benefits under the Act. Therefore, and absent a contrary instruction, the jury was authorized to find that, if Hennings's employment medical benefits alone were not equal to or greater than medical benefits under the Act, his employment benefits were not equal to or greater than benefits under the Act.

Gulf had the burden of proof on this question by a preponderance of the evidence. *See* TEX. LAB.CODE ANN. § 410.303 (Vernon 2006). Thus, as the party complaining on appeal of the factual insufficiency of the evidence, it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). We weigh all the evidence, and we can set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

Some facts are undisputed: Hennings suffered an on-the-job injury and the Cowboys had workers' compensation insurance coverage; his post-injury income from his employment greatly exceeded the income benefits available under the Act; and his medical benefits from his employment con-

tract expired when the Cowboys terminated his contract.

Hennings said that his neck injury was related to chronic arthritic bone spurs and that there also was bulging of the disc in the segment above the fusion and in the two segments below it. Although there was no evidence quantifying the value of lifetime medical benefits available under the Act, the jury could reasonably infer that having such benefits available under the Act was greater than the medical benefits he had received from his employment, while considering that he had no future medical benefits as a result of the Cowboys' termination of the employment contract. Thus, the jury's answer to Question 1 of the charge as given was not contrary to the great weight and preponderance of the evidence.

### E. Statutory Construction

■ We now turn to the first contention of Gulf's first issue, *i.e.*, that Hennings cannot recover as a matter of law.[7] To make this determination, we must construe the statute and rules in question.

■ We construe a statute "first, by looking to the plain and common meaning of the statute." *Fitzgerald v. Advanced Spine Fixation Systems*, 996 S.W.2d 864, 865 (Tex.1999). If the statutory language is unambiguous, we adopt the plain meaning of the provision's words and terms. *Id.* We also are to liberally construe workers' compensation law to provide benefits to injured workers. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999).

Hennings asserts that section 406.095 requires an election only when the professional athlete's income *and* medical benefits under his employment contract are

---

7. Ordinarily we would address this contention first because it could result in a rendition of judgment. Here, only a remand is possible. See footnote 6.

equal to or greater than the corresponding benefits under the Act.

The unambiguous language in section 406.095 and Rule 112.401(a) supports Hennings's construction.[8] The first sentence of section 406.095(a) defines which professional athletes may not receive benefits from their employment contracts *and* benefits under the Act: those professional athletes whose employment contract benefits are equal to or greater than benefits under the Act are precluded from receiving both sets of benefits. *See* TEX. LAB. CODE ANN. § 406.095(a). The second sentence confirms this construction because only an athlete "covered by *such* a contract or agreement who sustains an injury in the course and scope of the athlete's employment" is required to "elect to receive either the benefits available under this subtitle or the benefits under the contract or agreement." *Id.* (emphasis added).

We next address Gulf's "piecemeal" issue: what is the result if a professional athlete's income benefits from his employment are equal to or greater than the income benefits under the Act, but his medical benefits from his employment are not equal to or greater than the medical benefits under the Act?

We believe that the Act requires that the income *and* the medical benefits from employment must each be equal to or

greater than the corresponding income benefits and medical benefits available under the Act. We base this determination on three factors.

First, section 406.095(a) says as much. It precludes only a professional athlete "entitled to benefits for medical care *and* weekly benefits" from his employment that *are* equal to or greater than benefits under the Act from also receiving equivalent income and medical benefits under the Act. *See* TEX. LAB.CODE ANN. § 406.095(a) (emphasis added). The statute does not mandate lumping together the two types of benefits to determine whether the employment set of benefits is equal to or greater than benefits under the Act.

Second, we construe the Act liberally in favor of providing benefits to an injured worker.

 Third, when the Texas Workers' Compensation Commission (TWCC) adopted its rules for professional athletes as required by section 406.095(b) in 1992, it responded to public comments on proposed Rules 112.401 and 112.402.[9] One comment opined that the athlete should be allowed a choice for each of the benefits provided under the Act. The TWCC disagreed, stating:

> Article 8308–3.075 [now section 406.095] does not require that athletes be given a choice for each benefit. It requires that, *under specific conditions,*[10] an athlete

---

8. Under this construction, Hennings essentially asserts that there are professional athletes who may recover both employment benefits and workers' compensation benefits.

9. The TWCC's interpretation of its own rules is entitled to deference by the courts. *See Public Util. Comm'n v. Gulf States Util.,* 809 S.W.2d 201, 207 (Tex.1991). An administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference and is controlling unless it is plainly erroneous or inconsistent. *Continental Cas. Co. v. Rivera,* 124 S.W.3d

705, 710 (Tex.App.-Austin 2003, pet. denied); *accord State v. New,* 159 S.W.3d 232, 234 (Tex.App.-Fort Worth 2005, no pet.).

10. We assume without deciding that these "specific conditions" are what we address in this opinion: only an athlete whose employer has workers' compensation insurance coverage and whose employment benefits are equal to or greater than workers' compensation benefits is required to elect which set of benefits he will receive and may not receive both sets of benefits.

choose between workers compensation benefits and contract or collective bargaining benefits. Based on the statute and § [Rule] 112.402, *if any of the benefits fails to be equal to or greater than workers compensation* benefits, the athlete is not allowed to make an election.

17 Tex. Reg. 6362, 6363 (1992), 1992 WL 226112 (emphases added) (to be codified at 28 TEX. ADMIN. CODE §§ 112.401–.402) (proposed June 19, 1992) (Tex. Workers' Comp. Comm'n). We agree with Hennings that this statement evinces an intent that both the income benefits and the medical benefits under the athletes employment contract, considered separately, must be equal to or greater than the corresponding income and medical benefits available under the Act.

We reject Gulf's construction of the statute and rules. We therefore hold that Hennings was not precluded from workers' compensation benefits in addition to his employment benefits. We overrule Gulf's first issue.

### IV. Offset or Credit

■ Gulf also filed a post-verdict motion titled "motion for offset/credit," which asked the trial court to allow an equitable offset or credit for the contractual and CBA medical and income benefits that Hennings had received. The trial court denied that motion, and in its second issue, Gulf asserts that the trial court abused its discretion in doing so.

A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *Beaumont*

*Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

Gulf cites no authority in workers' compensation law—statute, rule, or case law—that would allow a trial court to grant such an equitable offset or credit.[11] Without any authority, we cannot say that the trial court abused its discretion. Furthermore, the judgment in this case entitles Hennings to *future* medical benefits, and Gulf has paid only *past* medical benefits. We overrule Gulf's second issue.

### V. Disability Period

■ Question 2 of the charge asked whether Hennings had a period of disability after March 7, 2001, and if so, what were the beginning and ending dates. The jury found a disability from March 8, 2001, until June 21, 2001, or fifteen weeks.

In two cross-issues, Hennings complains that the jury's finding of fifteen weeks should be set aside because he conclusively proved, *i.e.*, as a matter of law, that he was disabled for at least 104 weeks, the maximum disability period for income benefits under the Act. *See* TEX. LAB.CODE ANN. § 401.011(30) (Vernon Supp.2007). He says that the trial court erred in not granting his motion to disregard the jury's finding and not entering judgment for temporary income benefits for 104 weeks.

Hennings had the burden of proof on the disability question. *See id.* § 410.303. When the party that had the burden of proof at trial complains of legal insufficiency of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237,

---

11. Moreover, we determined above that professional athletes who are not required to elect by section 406.095 may recover both employment benefits and workers' compensation benefits. Thus, an offset or credit as claimed by Gulf would contravene section 406.095.

241 (Tex.2001). We first examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the adverse finding, our inquiry ends. *Id.* "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995) (citations omitted). In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005).

Disability is "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage." Tex. Lab.Code Ann. § 401.011(16).

Hennings argues that he suffered a career-ending injury, was terminated by the Cowboys, and was not able to return to any job or profession earning his preinjury wage. Hennings testified that his surgeon indicated that he had received an excellent result from his surgery, that his prognosis was excellent, and that he was released from his surgeon's care. Hennings also said that while his surgeon advised against his continuing to play football, no physician prohibited him from playing. As of the time of trial, Hennings had not seen a physician for his neck injury in over two years. Hennings admitted that he could have played football for either the Cowboys or another team after June 21, 2001, at his own option, but he chose to retire to avoid the substantial risk of further injury to his cervical spine.

Hennings's admission that he could have continued playing football but chose not to is more than a scintilla of evidence that supports the jury's fifteen-week disability period finding. Accordingly, we overrule Hennings's two issues.

## VI. Conclusion

For the reasons stated, we affirm the trial court's judgment.