**Reversed and Remanded and Opinion filed November 27, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00670-CV

### HAMILTON METALS, INC., Appellant

### V.

### GLOBAL METAL SERVICES, LTD., Appellee

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2016-32078**

## O P I N I O N

A judgment debtor appeals the trial court's order appointing a receiver under section 31.002(b) of the Civil Practice and Remedies Code. When the trial court signed the order, there was no evidence before the trial court showing that the judgment debtor owned property that could not readily be attached or levied on by ordinary legal process. Concluding that the trial court abused its discretion in issuing the order, we reverse and remand.

# I. Factual and Procedural Background

The trial court rendered a final money judgment on October 2, 2016, in favor of appellee/plaintiff Global Metal Services, Ltd. and against appellant/defendant Hamilton Metals, Inc. ("Judgment"). Global initiated a garnishment proceeding against PNC Bank, N.A., a financial institution holding three accounts in Hamilton's name.

Global filed an "Amended Ex Parte Application for Turnover After Judgment and for Appointment of Receiver," asserting that it was the owner and holder of the Judgment. According to Global, before seeking turnover relief Global made several attempts to contact Hamilton, and Global recorded various abstracts of judgment in the real property records of various Texas counties. Global also noted that it had initiated the garnishment proceeding against PNC Bank. Global asserted that none of these actions resulted in the successful collection of any money to be credited against the Judgment. Global noted that it had come to Global's attention that some of Hamilton's assets were pledged in connection with a Revolving Credit and Security Agreement with PNC Bank. Global stated that this line of credit "was subsequently foreclosed upon [by PNC Bank] under UCC Article 9 and [Hamilton's] tangible and intangible assets . . . were made available to third parties for purchase via private sale and were subsequently sold." Global asserted that at the time of the application, these assets were "not believed to be within the scope of this Application," but Global stated that it reserved the right to ask the trial court for additional relief as to these assets. The record does not reflect that Global ever sought such relief.

In its application, Global alleged that, upon information and belief, Hamilton continues to exist. Global asserted that Global had made a good faith effort to collect the Judgment but that Global had been unsuccessful in doing so. Global

2

claimed that Hamilton's failure to make any attempt to resolve the matter had made it necessary for Global to seek appointment of a receiver to facilitate the collection of the Judgment. Global alleged that it in good faith had reason to believe that Hamilton, either directly or indirectly through its Chief Executive Officer, owned property that could not be attached or levied on by ordinary legal process and that was not exempt from attachment, execution, or seizure for the satisfaction of liabilities. Global requested the appointment of a receiver under the Texas turnover statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2015).

The trial court signed an order appointing a receiver. In the order the trial court gave the receiver the power to take possession of "any non-exempt property . . . of [Hamilton] necessary to pay judgments outstanding against [Hamilton]." The trial court also ordered Hamilton to turn over to the receiver within five days of receiving a copy of the order "all checks, cash, securities (stocks and bonds), interest in any business and/or partnerships, promissory notes, documents of title and contracts owned by or in the name of [Hamilton]." In its order the trial court did not make any express finding that Hamilton owned any property that could not readily be attached or levied on by ordinary legal process.

## II. ISSUE AND ANALYSIS

On appeal from the trial court's order, Hamilton asserts various appellate arguments in support of the proposition that the trial court abused its discretion in issuing the receivership order. In the first appellate issue, Hamilton asserts that Global did not submit any evidence to the trial court that Hamilton owned any assets that could not readily be attached or levied on by ordinary legal process.

The turnover statute provides in pertinent part as follows:

3

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

   (1) cannot readily be attached or levied on by ordinary legal process; and

   (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

   (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

   (2) otherwise apply the property to the satisfaction of the judgment; or

   (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2015).

We review a trial court's order requiring turnover and appointing a receiver for an abuse of discretion. *Tidwell v. Roberson*, No. 14-16-00170-CV, 2017 WL 3612043, at *3 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, pet. denied). The trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or if the trial court acts "without reference to any guiding rules and principles." *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (internal citations omitted). A trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason. *Tidwell*, 2017 WL 3612043, at *3.

A judgment creditor may pursue turnover relief against a judgment debtor if the debtor owns property that (1) cannot readily be attached or levied on by

4

ordinary legal process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a); *Tidwell*, 2017 WL 3612043, at *6. To obtain turnover relief, the judgment creditor must carry the burden of proving that (1) the judgment debtor owns property (2) the property cannot readily be attached or levied on by ordinary legal process; and (3) the property is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. *See Stephenson v. LeBoeuf*, No. 14-02-00130-CV, 2003 WL 22097781, at *2 (Tex. App.—Houston [14th Dist.] Sept. 11, 2003, no pet.) (mem. op.). Simply filing an application or motion for turnover relief does not suffice; rather, the judgment creditor must submit evidence establishing these elements. *See Shultz v. Fifth Judicial Circuit Court of Appeals at Dallas*, 810 S.W.2d 738, 740 (Tex. 1991), *abrogated on other grounds by*, *In re Sheshtawy*, 154 S.W.3d 114, 124–25 (Tex. 2004); *Stephenson*, 2003 WL 22097781, at *2; *Black v. Shor*, 443 S.W.3d 170, 181 (Tex. App.—Corpus Christi 2013, no pet.).

Though the statute requires some evidence that the judgment debtor owns non-exempt property that cannot readily be attached or levied on by ordinary legal process, section 31.002 does not specify, or restrict, the manner in which evidence may be received in order for a trial court to determine whether the conditions of section 31.002(a) exist. *Tidwell*, 2017 WL 3612043, at *6. Nor does the statute require that such evidence be in any particular form, that it be at any particular level of specificity, or that it reach any particular quantum before the court may grant aid under section 31.002. *Id.* A lack of evidence to support turnover relief does not automatically invalidate the trial court's order, but serves as a "relevant consideration in determining if the trial court abused its discretionary authority in issuing the order." *Buller*, 806 S.W.2d at 226; *Tidwell*, 2017 WL 3612043, at *6.

5

**A. Does the record contain evidence that the judgment debtor owned property?**

We first address whether the evidence before the trial court showed that Hamilton owned any property when Global sought appointment of a receiver. Hamilton submitted an affidavit from its Chief Executive Officer, James S. Millman, who testified as follows:

- Hamilton was a Houston-based wholesaler of non-corrosive steel pipe used in oil and gas exploration and production operations.

- Hamilton financed its operations in part by a revolving line of credit issued by PNB Bank, N.A. that was secured by a duly-perfected, first-priority lien on all of Hamilton's assets.

- After encountering financial difficulties, Hamilton defaulted under the terms of its credit agreement with PNC Bank.

- As a result of the default, PNC Bank exercised its remedies under the credit agreement and disposed of its collateral at a private foreclosure sale conducted on October 6, 2016.

- The buyer at the foreclosure sale was BioUrja Trading, LLC. Neither Hamilton, nor any of its current or former officers and directors, have any interest in BioUrja Trading, LLC or Hamilton Metals, LLC, the entity formed by BioUrja to take ownership of Hamilton's former assets.

- The sale price at the foreclosure sale did not satisfy the total amount of PNC Bank's secured indebtedness, and PNC Bank currently holds a deficiency claim against Hamilton in excess of $6 million. PNC Bank's deficiency claim remains secured by a first-priority lien on any remaining assets, although Millman is not aware of any such assets.

- After foreclosure and liquidation of Hamilton's assets, Hamilton ceased operations.

- Hamilton "is a dormant legal entity with no valuable assets or equity."

Global did not dispute that the private foreclosure sale of Hamilton's assets

6

had occurred on October 6, 2016 (before the trial court rendered the Judgment). In Global's application for a receiver, Global stated that Hamilton's line of credit "was subsequently foreclosed upon [by PNC Bank] under UCC Article 9 and [Hamilton's] tangible and intangible assets . . . were made available to third parties for purchase via private sale and were subsequently sold." Global asserted that at the time of the application, these assets were "not believed to be within the scope of this Application," but Global stated that it reserved the right to ask the trial court for additional relief as to these assets. The record does not reflect that Global ever sought such relief. Consistent with this part of the application, in the trial court's receivership order, the trial court excluded from the scope of the order the assets and property formerly owned by Hamilton that were acquired by BioUrja Trading, LLC and Hamilton Metals, LLC from PNC Bank through the foreclosure sale and related transactions. The trial court stated that this exclusion was without prejudice to Global's or the receiver's ability to petition the court for additional relief with respect to such assets and property. The record does not reflect that Global or the receiver has petitioned for any such additional relief.

On appeal, Global cites a letter it submitted from an attorney for BioUrja Trading, LLC and Hamilton Metals, LLC, in which the attorney stated that some, but not all of Hamilton's assets were sold on October 6, 2016. The attorney also stated that, as to the three accounts at PNC Bank in Hamilton's name, Hamilton Metals, LLC has taken control of one account, and as to the other two, "it is our understanding that these accounts still belong to, and are controlled by, [Hamilton] and that there may only be a nominal, if any, amount of money in them, but this would need to be discussed with [PNC Bank]." The attorney did not state which assets of Hamilton were not sold on October 6, 2016. Though the attorney conveys his understanding that two bank accounts still belong to and are controlled

7

by Hamilton, his statements indicate that he does not have any personal knowledge as to whether PNC Bank owes Hamilton any amount as to either of these two accounts.

Global also submitted an answer PNC Bank filed in a garnishment proceeding Global initiated. This answer indicates that PNC Bank still holds three accounts in Hamilton's name. After asserting various objections in its answer, PNC Bank stated that it was unable to definitively determine whether it was indebted to Hamilton at the time of the answer because it was unable to definitively determine the ownership of monies held in three Hamilton accounts. On appeal, Global asserts that the two accounts at PNC Bank that counsel for BioUrja Trading, LLC and Hamilton Metals, LLC understood were still owned and controlled by Hamilton are "accounts subject to collections." Yet, no evidence before the trial court showed that PNC Bank was indebted to Hamilton under any of the three accounts. We presume, without deciding, that the PNC Bank accounts would constitute property owned by Hamilton.

Global also cites a "Schedule 5" that lists assets not included in the private sale by PNC Bank. Global asserts that this schedule shows assets owned by Hamilton that were not sold on October 6, 2016. We presume, without deciding, that any evidence of assets owned by Hamilton in October 2016 and not sold by PNC Bank would be evidence of assets Hamilton owned when the trial court signed the receivership order.

According to Schedule 5, the private sale was not to include the following items:

> (1) any lease, license, contract, or agreement to which Hamilton is a party to the extent that a security interest therein is prohibited by or in violation of any applicable law or a term or condition of any such lease, license, contract, or agreement;

(2) any equipment owned by Hamilton that is subject to a purchase-money lien or a capital-lease obligation if the grant of a security interest therein would constitute a violation of a valid and enforceable restriction in favor of a third party, unless any required consents have been obtained;

(3) any monies, checks, securities or other items on deposit or otherwise held in deposit accounts or trust accounts specifically and exclusively used for payroll, payroll taxes, deferred compensation and other employee wage and benefit payments to or for the direct benefit of Hamilton's employees.

Schedule 5 does not contain any statement that Hamilton owns or possesses any of the above-described assets; rather, Schedule 5 and the notice document of which it is a part provide that if Hamilton owns any such assets, the assets would not be part of the private sale. No evidence before the trial court showed that Hamilton owned any such assets.

The list of excluded assets in Schedule 5 also includes certain tubular goods delivered to Hamilton as consignee and stored on Hamilton's property as consignee, for which ownership of the goods had not been transferred to Hamilton or its customers under an agreement between Hamilton and another company. Hamilton would not own any of these goods.

The list of excluded assets in Schedule 5 also includes the following assets:

(1) all inventory of Corrosive Resistant Alloy Tubular Products, 13 Chrome Tubular products and other products consigned to Hamilton by Sumitomo Corporation of America;

(2) six copiers, identified by serial number, securing Hamilton's obligations to Konica Minolta Business Solutions USA, Inc.

(3) three Caterpillar assets, identified by serial number, securing Hamilton's obligations to De Lage Landen Financial Services, Inc.;

(4) one Chevy Traverse SUV, identified by VIN number.

(collectively the "Excluded Assets"). We presume, without deciding, that the

9

evidence before the trial court showed that Hamilton owned each of the Excluded Assets when Global requested appointment of a receiver and when the trial court signed the receivership order. Thus, the evidence before the trial court shows only that Hamilton owned the Excluded Assets and the three accounts at PNC Bank.

**B. Does the record contain evidence that any property owned by the judgment debtor could not readily be attached or levied on by ordinary legal process?**

We now review the evidence before the trial court to determine if there was evidence that property owned by Hamilton could not readily be attached or levied on by ordinary legal process. Even presuming that the three PNC Bank accounts are property owned by Hamilton, no evidence shows that any of these accounts could not readily be attached or levied on by ordinary legal process. Instead, the evidence shows that these accounts were the subject of a garnishment proceeding. Though Global asserted in its application that the garnishment proceeding had not resulted in the collection of any amount of money, no evidence before the trial court addressed the status of the garnishment proceeding or whether the proceeding likely would lead to the recovery of funds by Global. The evidence does not show that any amounts owed to Hamilton by PNC Bank under these accounts could not readily be attached or levied on by ordinary legal process. *See Stephenson*, 2003 WL 22097781, at *3 (noting that no evidence in the record showed that money in an escrow fund was not subject to garnishment).

As to the Excluded Assets, no evidence in the record addresses whether any of these assets could not readily be attached or levied on by ordinary legal process. The record reflects that Global did not conduct any post-judgment discovery. Global did not submit an affidavit or testimony from a representative of Global. The record contains no testimony from any person as to whether any of the Excluded Assets could not readily be attached or levied on by ordinary legal

10

process. There is no evidence or allegation of any of the following:

(1) that Global has requested issuance of any writ of execution,

(2) that any writ of execution has issued,

(3) that Global has sought to enforce any writ of execution against any of the Excluded assets, or

(4) that any writ of execution has been returned *nulla bona*.[1]

*Cf. Tidwell*, 2017 WL 3612043, at *7 (finding sufficient evidence that property owned by judgment debtor could not readily be attached or levied on by ordinary legal process in case in which, among other things, evidence showed writ of execution was returned *nulla bona*).

Global had the burden of proving that at the time of the application for relief under the turnover statute Hamilton owned property that could not readily be attached or levied on by ordinary legal process. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a); *Stephenson*, 2003 WL 22097781, at *2. Global needed to present evidence rather than rely on its receivership application. *See Shultz*, 810 S.W.2d at 740; *Stephenson*, 2003 WL 22097781, at *2; *Black*, 443 S.W.3d at 181. Arguments of counsel do not constitute evidence. *See Black*, 443 S.W.3d at 180. The evidence before the trial court did not show that that any of the Excluded Assets, or any other property owned by Hamilton, could not readily be attached or levied on by ordinary legal process. Under the applicable standard of review, we conclude that the trial court abused its discretion in signing the receivership order. *See Shultz*, 810 S.W.2d at 740; *Stephenson*, 2003 WL 22097781, at *2; *Black*, 443 S.W.3d at 181. Therefore, we sustain Hamilton's first issue.

---

[1] The Latin term *"nulla bona"* means "no goods." Black's Law Dictionary 1098 (8th ed. 2004). In the law it is a form of return by a sheriff or constable upon an execution when the judgment debtor has no seizable property within the jurisdiction. *Id.*

11

## III. CONCLUSION

The evidence before the trial court did not show that that Hamilton owned property that could not readily be attached or levied on by ordinary legal process. Because the trial court abused its discretion in granting Global's application for the appointment of a receiver and in signing the receivership order, we reverse the trial court's order and remand for further proceedings.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Busby and Wise.