In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00100-CV


______________________________




MAJOR KENNEDY, JR., AND WESLEY MOORE, INTERVENOR, Appellants



V.



OGDEN S. HUDNALL, TRUSTEE FOR


OGDEN S. HUDNALL TRUST #2, ET AL., Appellees



 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2005-410




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 This is an attempt to appeal from a post-judgment order. The plaintiffs below were several
trusts (1) (collectively, the Trusts) who, on February 14, 2007, had obtained a final judgment of just
over $300,000.00 against Major Kennedy, Jr., for theft of timber. (2) One month after that judgment,
on March 15, 2007, Kennedy filed a deed dated March 14, 2007, purporting to transfer his interest
in 1,704 acres of property to his good friend, Wesley Moore. (3) The next week, on March 21, 2007,
the Trusts filed their abstract of judgment and the clerk issued a writ of execution. 

 The Trusts believed Kennedy's conveyance of the 1,704 acres was fraudulent and sought to
enforce or satisfy their judgment via a post-judgment "Motion for Turnover Relief" (4) filed under the
theft of timber cause of action. (5) The motion pled certain facts required for turnover, but actually
requested that the sheriff seize and sell the allegedly fraudulently transferred property pursuant to
the Fraudulent Transfer Act (FTA). (6)

 After a two-day hearing, (7) the court issued an order titled "Order for Turnover Relief," from
which Moore and Kennedy attempt to appeal. The difficulty of the determination of the issues in
this case is compounded by the fact of inartful pleading and drafting. In addition, although the Trusts
maintain that their sole purpose was to pursue the issuance of execution pursuant to
Section 24.008(b) of the Texas Business and Commerce Code, it is clear that the parties believed that
they were litigating the issue of fraudulent transfer in the same suit which had previously been a suit
for damages for the theft of timber--something which is not permitted under Section 24.008(a),
which requires a separate lawsuit for that purpose. See Tex. Bus. & Com. Code Ann. § 24.008(b). 
We have determined that this order is not a final judgment or an order susceptible to appeal and,
accordingly, that we lack jurisdiction to consider the appeal. 

A. Appellate Jurisdiction

 Even if not raised by the parties, we may not ignore a lack of appellate jurisdiction. See New
York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 679 (Tex. 1990); McCauley v. Consol.
Underwriters, 157 Tex. 475, 478, 304 S.W.2d 265, 266 (1957). "Courts always have jurisdiction
to determine their own jurisdiction." Houston Mun. Employees Pension Sys. v. Ferrell, No. 05-0587,
2007 Tex. App. LEXIS 1030, at *17 (Tex. Nov. 30, 2007); see also Wagner v. Warnasch, 156 Tex.
334, 339, 295 S.W.2d 890, 893 (1956) (no question of the authority of the courts of appeals to
address the fundamental error of lack of jurisdiction).

 The failure of a jurisdictional requirement deprives the court of the power to act (other than
to determine that it has no jurisdiction). Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser, 140
S.W.3d 351, 359 (Tex. 2004). If we conclude that we do not have jurisdiction, we must recognize
that and dismiss the attempted appeal. See Kilroy v. Kilroy, 137 S.W.3d 780, 783 (Tex.
App.--Houston [1st Dist.] 2004, no pet.).

B. Post-Judgment Orders

 The general rule is that a court has the inherent power to enforce its judgments, even after
the expiration of its plenary power, and the court may employ suitable methods in doing so. See
Tex. R. Civ. P. 308; Arndt v. Farris, 633 S.W.2d 497, 499 (Tex. 1982); Ex parte Gorena, 595
S.W.2d 841, 844 (Tex. 1979); see also In re Crow-Billingsley Air Park, Ltd., 98 S.W.3d 178, 179
(Tex. 2003) ("trial court has an affirmative duty to enforce its judgment" under Rule 308). 
Generally, an order made for the purpose of carrying into effect an already-entered judgment is not
a final judgment or decree and cannot be appealed as such. Wagner, 295 S.W.2d at 893; see also
Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 1997) (final judgments of trial courts are
appealable). (8) The "usual writs and orders to aid in execution to collect a final money judgment are
not, in general, appealable orders." Schultz v. 5th Jud. Dist. Court of Appeals of Dallas, 810 S.W.2d
738, 740 (Tex. 1991). If the order is not an appealable one, jurisdiction does not attach in the court
of appeals. Id. at n.6. On the other hand, some post-judgment orders are appealable. Id. at 740
(finding turnover order in that case, which resolved property rights and acted "in the nature of a
mandatory injunction," to be appealable). 

 We look to the substance of the order to determine whether it is appealable. See, e.g.,
Wagner, 295 S.W.2d at 892 (looking to nature of post-judgment relief granted in order over relief
actually requested in motion); cf. Surgitek, Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 601 (Tex.
1999) (order's necessary predicate findings provided jurisdictional basis, despite title to contrary);
accord Burke v. Union Pac. Res. Co., 138 S.W.3d 46, 60 (Tex. App.--Texarkana 2004, pet. denied,
pet. dism'd [2 pets.]) ("A motion should be construed by its substance to determine the relief sought,
not merely by its form or caption.").

C. The "Turnover" Motion and Order

 After the Trusts' motion set forth the fact of the timber theft judgment and facts alleging
fraudulent transfer, section three of the motion, titled "Property Subject to Turnover," asserted that
the property at issue "cannot readily be attached or levied on by ordinary legal process. This property
is not exempt under any statute from attachment, execution, or seizure for the satisfaction of
liabilities." This language tracks the statutory prerequisites for the issuance of a turnover order. See
Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). 

 Section four of the Trusts' motion sets forth the allegedly applicable law as the FTA,
emphasizing that a judgment creditor may request that the court order execution against a
fraudulently transferred asset. See Tex. Bus. & Com. Code Ann. § 24.008(b) ("subsection (b)");
section five of the motion, though titled "Motion for Turnover," requests that the court "pursuant to
Section 24.008(b) of the Texas and [sic] Business & Commerce Code to order the Rusk County
Sheriff to seize and sale [sic] the above described property." This, together with costs and attorney's
fees, is the only relief sought.

 The court's order is titled "Order for Turnover Relief." It recites that "the property in question
is not exempt under any statute from attachment, execution, or seizure" and that "the property in
question cannot readily be attached or levied on by ordinary legal process." The title and these
recitations track the turnover statute. However, the only relief actually ordered is, in addition to an
award of costs and attorney's fees, that the sheriff "seize and sale [sic] the property." While the
court's order recited that Kennedy "is the owner of" part of the 1,704-acre property described in the
deed filed in the March 15, 2007, property records, the court order did not include any explicit
findings or orders regarding fraudulent conveyance. (9) To sort out what kind of an order was actually
entered, we first determine what it is not.

 Turnover

 A turnover order is a "procedural device by which judgment creditors may reach assets of a
debtor that are otherwise difficult to attach or levy on by ordinary legal process." Beaumont Bank
N.A. v. Buller, 806 S.W.2d 223, 224 (Tex. 1991); see also Tex. Civ. Prac. & Rem. Code Ann.
§ 31.002(a). To accomplish turnover, the court may 

 (1) order the judgment debtor to turn over nonexempt property that is in the
debtor's possession or is subject to the debtor's control . . . to a designated sheriff or
constable for execution;

 (2) otherwise apply the property to the satisfaction of the judgment; or

 (3) appoint a receiver with the authority to take possession of the nonexempt
property, sell it, and pay the proceeds. . . .


Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b). A turnover order may be enforced by contempt
proceedings. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(c). 

 A turnover order "requires the debtor to bring to the court all documents or property used to
satisfy a judgment. The actual effect of the bill is to require the burden of production of property
which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy
his judgment." Buller, 806 S.W.2d at 226. It is this aspect of a turnover order (i.e., that it acts "in
the nature of a mandatory injunction") which makes it appealable. See Schultz, 810 S.W.2d at 740. 

 At oral argument, all parties conceded this is not a turnover order. We agree. The substance
of the order requires no affirmative action by either Kennedy or Moore. It does not order anything
collected or turned over and cannot be read to act as a mandatory injunction as to the judgment
debtor or transferee. The order directs affirmative action of only the sheriff himself to seize and sell
the property the subject of the motion. (10)

 Fraudulent Transfer Act

 The Trusts assert that relief was granted under the FTA, which provides for several creditors'
remedies against a fraudulent transfer, most applicable to all creditors (11) and one particular to
judgment creditors. 

 There are remedies which are available to creditors for alleged fraudulent transfers pursuant
to Section 24.008(a) of the Texas Business and Commerce Code. However, that section is
applicable to "an action for relief against a transfer or obligation"; since no action for relief was filed
independently of the original suit in which the money judgment was granted, it must not be an action
under Section 24.008(a). Tex. Bus. & Com. Code Ann. § 24.008(a). 

 The Trusts maintain that their proceeding was brought pursuant to Section 24.008(b), which
reads, in part, that a judgment creditor, "if the court so orders, may levy execution on the asset
transferred or its proceeds." Tex. Bus. & Com. Code Ann. § 24.008(b). The subsection (b) remedy
is available "if the court so orders," though the particular procedure of obtaining that order is not
prescribed. (12) Considering the multiple remedies available to a creditor with regard to an alleged
fraudulent transfer by a debtor, the confused state of the pleadings filed, the quite unusual order
which was entered, and the fact that the parties apparently believed that they were litigating the issue
of fraudulent transfer, we find ourselves forced to fit the actions which were taken into a remedy
authorized by one of the statutes. Primarily because this order arises from a motion filed within the
original suit which granted the money judgment and is not a separate action, we find that the function
and substance of the order appealed is as an order incident to execution and levy under
subsection (b). While this is not a "usual" writ or order to aid in execution (since it impliedly
purports to make a finding of title to the property) (13) we find it does not act as a mandatory injunction,
is for the purpose of carrying into effect an already-entered judgment, and cannot be appealed as
such. See Wagner, 295 S.W.2d at 893.

 No right of appeal from the trial court's order is provided by the applicable statutes or rules. 
This finding, however, does not necessarily leave a complainant without any means of immediate
relief through means other than a direct appeal from the effects of this order.

 Because the order is not appealable, we do not have jurisdiction. Accordingly, we dismiss
the appeal for want of jurisdiction.



 Bailey C. Moseley

 Justice


Date Submitted: February 13, 2008

Date Decided: March 28, 2008

1. Ogden S. Hudnall, Trustee for Ogden S. Hudnall Trust #2; Lometa Hudnall Cox, Trustee
for Lometa Hudnall Cox Trust #2; Lynne Pirtle, Trustee for Lynne Pirtle Trust; Jeanann Pirtle,
Trustee for Jeanann Pirtle Trust; and Bank of America, Trustee for James T. Pirtle Trust #4 and
Trustee for George William Pirtle, III, Trust #4.
2. The judgment was against Kennedy and another party, jointly and severally. 
3. The extent of Kennedy's ownership was disputed by the Trusts. 
4. See Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon Supp. 2007). 
5. The notice of sheriff's sale on the writ of execution issued May 9, 2007, the day after the
Trusts' "Motion for Turnover Relief" was filed, and included numerous properties owned by
Kennedy, but did not include the 1,704-acre property. 
6. See Tex. Bus. & Com. Code Ann. § 24.008 (Vernon 2002). 
7. Moore, who had not been a party in the underlying theft of timber action, was present at and
participated in the hearing on the Trusts' post-judgment motion. The court granted Moore's plea to
intervene, made after the hearing, after entering the order now appealed. 
8. Moreover, there can be only one final judgment, see Tex. R. Civ. P. 301, which, in this case,
is the underlying theft of timber judgment. 
9. The court later addressed this in findings of fact and conclusions of law for appeal.
10. By this wording in the order, we assume that it was the intention of the court to order that
the sheriff, once receiving a properly-issued writ of execution, was to levy on the property and sell
it under execution. Otherwise, we would need to construe this as the appointment of the sheriff as
a receiver to sell the property. Such an action, which would be available pursuant to Section
24.008(a) of the Texas Business and Commerce Code, would require the filing of a separate action
and an action of that nature pursuant to the turnover statute, subsection (a)(3), would be available
only against a judgment debtor and only against property in that debtor's possession or subject to that
debtor's control. See Buller, 806 S.W.2d at 226-27. 
11. A creditor may, "in an action for relief," obtain either avoidance of the transfer; an
attachment or other provisional remedy against the asset transferred; an injunction against further
disposition; appointment of a receiver over the asset transferred; or other equitable relief. Tex. Bus.
& Com. Code Ann. § 24.008(a)
.
12. It appears that a judgment creditor may seek execution against an allegedly fraudulent
transfer under subsection (b) without filing a separate suit or first having the question of fraud
determined. See 37 Am. Jur.2d Fraudulent Conveyances § 146 (2007) (Uniform FTA does not
require, in most jurisdictions, bringing direct suit for execution by judgment creditor); 48 Tex.
Jur.3d Judgments § 623 (2008) (judgment creditor may levy without first attacking the conveyance). 
Any due process concerns in this summary proceeding are not properly before us. Moreover, since
the Legislature has authorized such a summary proceeding, the wisdom in it is not ours to determine
in this attempted appeal. 
13. Although we see nothing in Section 24.008(b) which authorizes a court to make a
determination whether a fraudulent transfer has taken place, we take no position at this point whether
a court acting solely under subsection (b) without a separate suit would have the ability to actually
or impliedly avoid the conveyance from Kennedy to Moore. See, e.g., Trevino v. Graves, 418
S.W.2d 529, 532 (Tex. Civ. App.--Houston [1st Dist.] 1967, no writ). Similarly, we take no
position on the necessity, if any, or effect in a collateral proceeding, if any, of the various factual
findings made by the court in issuing this order, but we see that there could be substantial difficulties
in attempting to employ those findings for use in collateral claims. See Buller, 806 S.W.2d at 225
n. 2. Neither subsection (b) nor the comments of the Uniform FTA Drafting Committee of the
National Conference of Commissioners on Uniform State Laws address the factors for a court to take
into account when determining whether to order the issuance of a writ of execution. 

 That further orders, or a collateral suit, may be necessary is not an issue before us and does
not change the nature of the order actually entered. See Wagner, 295 S.W.2d at 892.


address a procedural matter. On
appeal, Wright contends the Reeds' pleadings fail to allege implied dedication. The pleadings
alleged that Cherry Lane had been dedicated to public use, but did not specifically plead implied
dedication. The record does not indicate that any special exceptions were made concerning this
issue.
            Pleadings are sufficient if they provide the opponent with fair and adequate notice. Roark
v. Allen, 633 S.W.2d 804, 810 (Tex. 1982); Burke v. Union Pac. Res. Co., 138 S.W.3d 46, 66 (Tex.
App.—Texarkana 2004, pet. filed). Pleadings provide fair and adequate notice if they contain
information sufficient to allow an opposing party to adequately prepare for trial. Roark, 633 S.W.2d
at 810. Further, pleadings are to be liberally construed. Id. The Reeds' pleadings contending the
road had been dedicated were sufficient to raise the issue of implied dedication.
            Even if the pleadings had been insufficient to raise implied dedication, the issue was tried
by consent. "When issues not raised by the pleadings are tried by express or implied consent of the
parties,  they  shall  be  treated  in  all  respects  as  if  they  had  been  raised  in  the  pleadings." 
Tex. R. Civ. P. 67. Trial by consent applies in the exceptional case where it clearly appears from the
record as a whole that the parties tried an unpled issue. Mastin v. Mastin, 70 S.W.3d 148, 154 (Tex.
App.—San Antonio 2001, no pet.); Stephanz v. Laird, 846 S.W.2d 895, 901 (Tex. App.—Houston
[1st Dist.] 1993, writ denied). To determine whether an issue was tried by consent, appellate courts
"must examine the record not for evidence of the issue, but rather for evidence of trial of the issue." 
Mastin, 70 S.W.3d at 154; Libhart v. Copeland, 949 S.W.2d 783, 797 (Tex. App.—Waco 1997, no
writ). Each side submitted a trial brief addressing implied dedication. The trial court addressed
implied dedication in its findings of fact. At a minimum, the parties tried the issue of implied
dedication by consent. Implied dedication was properly at issue. We now turn to the substance of
the implied dedication issue.
2.         Implied Dedication Was Conclusively Proven
            The Reeds assert the evidence conclusively proved implied dedication. We agree, because
we hold there was no evidence to rebut the presumption of dedication which arose from the
conclusive proof that (A) the origin of Cherry Lane was shrouded in obscurity, and (B) before 1983
the public made long and continuous use of Cherry Lane.
            The Reeds appeal from a bench trial. Findings of fact entered in a case tried to the court are
of the same force and dignity as a jury's answers to jury questions. Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for evidentiary
sufficiency by the same standards that are applied in reviewing evidentiary sufficiency to support a
jury verdict. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).
            When deciding a legal sufficiency point concerning a fact issue, we must consider all the
evidence in the record in the light most favorable to the party in whose favor the verdict has been
rendered, and we must apply every reasonable inference that could be made from the evidence in that
party's favor. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Pilgrim's
Pride Corp. v. Smoak, 134 S.W.3d 880, 888–89 (Tex. App.—Texarkana 2004, pet. denied). We
disregard all evidence and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d
497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). A
no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact;
(b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered
to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla;
or (d) the evidence conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the
existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex.
2002). 
            The trial court addressed only dedicatory intent


 in finding Cherry Lane had not been
dedicated. But since the trial court addressed that element, any omitted findings will be deemed to
support the judgment if evidence exists to support such findings. See Tex. R. Civ. P. 299; Lindner
v. Hill, 691 S.W.2d 590, 592 (Tex. 1985); Norris v. Norris, 56 S.W.3d 333, 345 (Tex. App.—El
Paso 2001, no pet.).
            Dedication


 is presumed


 when the public engages in long and continuous use of a road
whose origin is "shrouded in obscurity." Graff, 947 S.W.2d at 637; Fazzino, 836 S.W.2d at 274; see
O'Connor, 339 S.W.2d at 882; Supak, 56 S.W.3d at 790.
            Because the evidence conclusively establishes (A) the origin of Cherry Lane is shrouded in
obscurity, and (B) before 1983 the public made long and continuous use of Cherry Lane, a
presumption arose that all elements of proof, essential to establish implied dedication, in fact existed. 
We find no evidence that tended to rebut that presumption.
            A.        Cherry Lane's Origin Is Shrouded in Obscurity
            The origin of Cherry Lane is "shrouded in obscurity," since the record provides no evidence
of the identity and no direct evidence of the intent of the owner who originally established the road. 
Wright contends the presumption of dedication does not apply because William Crain testified he
built the road 1965 when he was leasing the field currently owned by Wright. Although Crain did
state that he "built" the road, he also testified the "old road" had been there when he "built" it in 1965
and that his business had used the road since 1963, two years before he "built" the road. Crain's
father-in-law bought the adjoining Twitty Nursery tract in 1948, and Crain became involved in the
business in 1955. In 1998, Crain sold the Twitty Nursery tract to his son-in-law. Crain testified he
leased the field currently owned by Wright from 1963 until 1977 or 1978. Crain testified as follows:
[Wright's Counsel]: Who built that road?
 
[Crain]: I did.
 
[Wright's Counsel]: When did you build it?
 
[Crain]: When we -- back when we started that farm. The old road was
there, but it wasn't much. And in order to get -- in bad weather . . .
 
[Wright's Counsel]: So at the time you built the road, who owned that dirt on which you were building the road.
 
[Crain]: I don't know.
 
[Wright's Counsel]: And that's what year when you're building that road?
 
[Crain]: It was back in probably '65.

Wright also claimed to have "built" the road. The testimony clearly indicates that Crain did not
originate the road, he only improved it. Further, Cherry Lane appears by name on the plat of
Meadow Brook Heights filed in 1951. The evidence conclusively establishes that the origin of the
road is shrouded in obscurity and there is no evidence of the identity, nor any direct evidence of the
intent, of the property's owner at the time the road was first established.
            B.        There Was Long and Continuous Public Use of Cherry Lane Before 1983
            In addition to the obscurity of the road's origin, the uncontradicted evidence established that
Cherry Lane had been used by the public for a long and continuous period before Wright's 1983
purchase of the property. Crain, Pam McKamie, Tiffin Reed, and Pete Reed testified that they had
been familiar with the area since the late fifties or early sixties and that the public had used the road
since that time. Crain testified the road had been used by members of the public, many of whose
names Crain did not know. Tiffin Reed, Pete Reed's father, testified he had been familiar with the
area since around 1951 and had lived nearby since 1958. Tiffin Reed testified he had used Cherry
Lane since 1958 and had never asked permission to do so. Ms. Goff stated in her deposition, which
was introduced at trial, that there had never been a dispute concerning whether Cherry Lane was a
public road and that they never requested permission to use it. According to McKamie, the daughter
of the Goffs, anybody could use Cherry Lane any time they wanted. McKamie testified that her
family had owned their tracts for approximately fifty-five or fifty-six years and that, until recently,
her family had used Cherry Lane approximately twice a day since the 1950s. Crain testified that B.L.
Benny, a radio announcer in Texarkana years ago, customarily drove down Cherry Lane in the
morning to a spot where he read his newspaper and that a lot of "parkers" would use Cherry Lane
at night. In addition, employees of Twitty Nursery as well as customers of Twitty Nursery used
Cherry Lane to access certain parts of the nursery. 
            Wright presented no evidence disputing the public use of Cherry Lane before her purchase
of the property in 1983. While Wright did testify that Bowie County has never maintained Cherry
Lane,


 she did not testify as to whether members of the public used Cherry Lane before she owned
the property. All of the other witnesses called by Wright limited their testimony to events after 1983. 
But events after 1983 are not at the crux of this inquiry.



            When viewed in a light most favorable to the verdict, the evidence at trial conclusively
established that the public used Cherry Lane for at least twenty-five years before Wright purchased
the property. That constituted long and continuous public use.



 
 
Conclusion
            Since the origin of the road is shrouded in obscurity, the evidence of long and continuous use
by the public raises a presumption that Cherry Lane had been dedicated to public use. There is no
evidence that rebuts the pre-1983 presumption of dedication.


 Because we hold Cherry Lane is a
public road due to its implied dedication, we decline to address the remaining points of error raised
by the Reeds. We reverse the judgment of the trial court and render judgment that Cherry Lane is
a public road.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 8, 2004
Date Decided:             January 20, 2005