**BEAUMONT BANK, N.A., and its Successor–in–Interest, the Federal Deposit Insurance Corp., Petitioner,**

v.

**Patricia H. BULLER, Individually and as Legal Representative of the Estate of Paul Buller, Respondent.**

No. C–9202.

Supreme Court of Texas.

April 3, 1991.

William B. Allison, William B. Paddock, for petitioner.

C. Marshall Rea, Houston, for respondent.

## OPINION

COOK, Justice.

This case arises from the trial court's application of the Texas "turnover" statute, the procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process.[1] The trial judge found that the respondent, Patricia H. Buller, both individually and as estate representative, possessed cash that was owned by the estate of her deceased husband. The trial court ordered Mrs. Buller to turn over the cash to the sheriff as partial satisfaction of the bank's judgment against the decedent's estate. The court of appeals reversed, holding there was "no evidence of the existence of the asset which is the subject of the turnover." 777 S.W.2d 763, 765. The issue presented to this court is whether the court of appeals properly reversed the trial court on "no evidence" grounds. For the reasons set forth below, the judgment of the court of appeals is reversed.

Paul Buller died on October 25, 1985, leaving a will designating his wife, Patricia Buller, sole heir and independent executrix of his estate. At the time of his death, Paul Buller owned a $100,000 certificate of deposit ("C.D."), which was deposited at the First State Bank of Lumberton in a bank account held jointly with his wife. This C.D. was scheduled as community property in the estate inventory. Mr. Buller was also guarantor on promissory notes totalling $199,553.09 held by Beaumont Bank.

On December 2, 1985, proceeds from the C.D. totalling $99,736.99 were transferred from the Lumberton bank account into the "Special Trust Account" of Marshall Rea—Mrs. Buller's attorney. Between December 23, 1985 and February 20, 1986, Mr. Rea made three wire transfers, totalling $47,010, from another trust account (styled "Trust Account no. 5") to Mrs. Buller's relatives. Although at the time of these

---

1. Tex.Civ.Prac. & Rem.Code Ann. sec. 31.002 (Vernon 1986 & Supp.1991), commonly referred to as the "turnover" statute, reads as follows:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:
    (1) cannot readily be attached or levied on by ordinary legal process; and
    (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
(b) The court may:
    (1) order the judgment debtor to turn over the property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;
    (2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.
(c) The court may enforce the order by contempt proceedings or by other appropriate means in the event of refusal or disobedience.
(d) The judgment creditor may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding.
(e) The judgment creditor is entitled to recover reasonable costs, including attorney's fees.
(f) A court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute, including Section 42.0021, Property Code. This subsection does not apply to the enforcement of a child support obligation or a judgment for past due child support.

wire transfers "Trust Account no. 5" did not contain estate money, Mr. Rea testified he considered these transfers to be "loans" against the estate funds. On February 28, 1986, Mr. Rea transferred $101,590 from the "Special Trust Account" to "Trust Account no. 5". Subsequently, Mr. Rea allegedly made more than thirty additional disbursements, including mortgage payments for Mrs. Buller's home, cash payments to Mrs. Buller, and payments for Mr. Rea's legal fees. During the approximately two years that Marshall Rea managed the estate of Paul Buller, he disbursed a total of $103,661.24 pursuant to the instructions of Mrs. Buller.

Soon after Mr. Buller's death, representatives of Beaumont Bank contacted Mr. Rea requesting that Mr. Buller's estate pledge the $100,000 C.D. as additional collateral against the promissory notes guaranteed by Mr. Buller. The parties engaged in several discussions concerning Beaumont Bank's claims against the Buller estate. A primary concern of these discussions was the ultimate disposition of the C.D., which Beaumont Bank believed was still deposited in the Lumberton Bank. At some point in these negotiations, Mr. Rea revealed to Beaumont Bank that the C.D. money had been transferred into his personal trust account.

In January 1986, the promissory notes guaranteed by the decedent went into default. In February 1986, Beaumont Bank filed suit on the notes, recovering a judgment in excess of $270,000. Subsequently, the Bank filed a motion for turnover relief, and a hearing was held on this issue on January 7, 1988 and February 8, 1988.[2] Judgment was rendered in favor of Beaumont Bank, and on March 14, 1988, the trial court issued an Order for Turnover Relief in the amount of $97,661.24.

At the turnover relief hearing, Mrs. Buller testified that the funds transferred from the Lumberton account to Mr. Rea's trust fund were the proceeds from the $100,000 C.D. belonging to Mr. Buller's estate. Mrs. Buller also testified that she was fully cognizant of her fiduciary duties as a personal representative of the estate, which included a duty to ascertain the liabilities of the estate. Nonetheless, Mrs. Buller admitted to personally authorizing the transfers from Mr. Rea's trust accounts for the express purpose of thwarting the seizure of the C.D. monies by Beaumont Bank, a legitimate creditor of the estate. The evidence at the hearing showed many, if not all, of the various disbursements from Mr. Rea's trust account were made to Mrs. Buller and other persons having no legitimate claim on the estate of Paul Buller.

When ordered by the trial court to provide receipts of the disbursements of the $100,000, Mrs. Buller provided only one: a receipt of the $17,000 wire transfer from Mr. Rea's "Special Trust Account" to the account of her son-in-law, who had no legitimate claim against the estate. Mrs. Buller claimed to have no other receipt that could account for how she spent the C.D. monies. Other testimony by Mrs. Buller revealed that she transferred approximately $250,000 to an account in the Cayman Islands in the summer of 1986. Mrs. Buller claimed that these Cayman Island funds were proceeds from an unspecified life insurance policy; however, no evidence was ever introduced as to the origin or exact amount of the alleged life insurance policy. Indeed, when questioned under oath about

---

**2.** The hearing on the motion for turnover relief commenced on January 7, 1988, but recessed to allow Mrs. Buller and her counsel to gather documentation of expenditures. Testimony then began when the court reconvened on February 8, 1988. While the statement of facts from the first hearing is not in the record, the statement of facts from the second hearing indicates that the trial court "recessed [the first] hearing" to allow "getting records together." Moreover, the Order for Turnover Relief states, "On February 8, 1988, a hearing was held on Plaintiff's Application for Turnover Relief," and that the evidence showed Mrs. Buller was the owner of the $97,661.24 ordered to be turned over.

Under Tex.R.App.P. 53(c), matters which are not "essential to the decision of the questions presented on appeal shall be omitted" from the statement of facts filed on appeal. The trial court's recessing of the first hearing to allow the parties to gather their documentation is not a matter which is essential to the decision of the question before us.

this account, Mrs. Buller claimed she could not even remember the name of the city in which this account was located. At this point in her testimony, Mrs. Buller was reprimanded by the trial court for laughing on the witness stand. Based on these facts, the trial court granted the requested turnover relief.

■ Although the court of appeals reversed the trial court on the ground that there was "no evidence" to support the issuance of the turnover order, the court of appeals should have reviewed the trial court's judgment under an abuse of discretion standard. *See, e.g., Buttles v. Navarro,* 766 S.W.2d 893 (Tex.App.—San Antonio 1989, no writ); *Sloan v. Douglass,* 713 S.W.2d 436 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); *Barlow v. Lane,* 745 S.W.2d 451 (Tex.App.—Waco 1988, writ denied). Whether there was no evidence to support the turnover award would, of course, be a relevant consideration in determining if the trial court abused its discretionary authority in issuing the order.

■ A trial court may be reversed for abusing its discretion only when the court of appeals finds the court acted in an unreasonable or arbitrary manner. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985). Stated somewhat differently, abuse of discretion occurs when a trial court acts "without reference to any guiding rules and principles." *Id.* at 241–42 (citations omitted). A corollary principle is that the court of appeals may not reverse for abuse of discretion merely because it disagrees with a decision by the trial court, if that decision was within the trial court's discretionary authority. *Id.* at 242. In the context of turnover orders, it has been held that a trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason. *Buttles,* 766 S.W.2d at 894–95. We now address whether the trial court abused its discretionary authority in ordering Mrs.

Buller to turn over the nearly $100,000 in cash directly traceable to her in her representative capacity.

■ The evidence is indisputable that the proceeds from the original C.D., which was estate property, were traced to Mrs. Buller. Thus, since Mrs. Buller held estate property, she became a holder of property of a judgment debtor, the estate.[3] Once these assets were traced to her in her representative capacity, a presumption arose that those assets were in her possession. The burden then shifted to her to account for the assets. This is consistent with the legislative intent underlying the turnover statute:

> The changes [in the turnover statute] are open-ended in that they allow a judgment creditor to get aid in collection from the Court in the form of an order which requires the debtor to bring to the Court all documents or property used to satisfy a judgment. The actual effect of the bill is to require the burden of production of property which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy his judgment.

Hittner, *Texas Post–Judgment Turnover and Receivership Statutes,* 45 Tex.Bar J. 417, 418 (April 1982) (quoting House and Senate Committee reports, Tex.Rev.Civ. Stat.Ann. art. 3827a (Vernon Supp.1980) (now Tex.Civ.Prac. & Rem.Code sec. 32.001 (Vernon 1986 and Supp.1991))). The efficacy of such a rule is underscored when the asset is cash. Unlike other assets, cash is fungible; thus, it will almost always be impossible for a judgment creditor to specifically identify a particular cash sum. Consequently, we hold that once cash was traced to Mrs. Buller, she was presumed to possess the entire amount traced and it became her burden to show she was not in possession of all or part of the traced amount.

At trial, Mrs. Buller's primary defense to enforcement of the statute was her argument that she had spent the original $100,-

---

**3.** Section 31.002 allows the court in a turnover proceeding to "order the judgment debtor to turn over the property that is in the debtor's possession *or is subject to the debtor's control."* Tex.Civ.Prac. & Rem.Code sec. 31.002(b)(1) (Vernon 1986) (emphasis added).

000 entrusted to her.[4] The basis of Mrs. Buller's defense is whether or not she can prove that estate monies were exhausted. A careful analysis of the evidence and testimony before the trial court shows that the evidence was not so compelling as to *require* the trial court's acceptance of Mrs. Buller's blanket assertion that all of the estate funds were expended. Clearly, the trial court was within its discretionary authority in disbelieving Mrs. Buller's unsubstantiated claim that cash was spent, without any substantive accounting of the expenditures—especially when evidence shows the existence of other cash funds that have been sequestered in a foreign account. All unaccounted for cash is presumed to be in the possession of the debtor; simply asserting "I spent it" is unacceptable.

■ Mrs. Buller and Mr. Rea did proffer some evidence as to how certain specific portions of the C.D. monies were transferred from the account. There was some evidence showing the payment of Mr. Rea's legal fees, three mortgage payments, and other payments. If the trial court had found that this evidence rebutted the presumption that Mrs. Buller possessed or had subject to her control estate assets traced to her, those amounts accounted for by Mrs. Buller would have to have been deducted from the overall amount ordered turned over. The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control. If the asset sought is a cash sum, then the turnover proceeding can only order the debtor to turn over as much of the cash amount as is in the possession or control of the debtor. Tex.Civ.Prac. & Rem.Code sec. 31.002(b)(2) (Vernon 1986).[5] If the debtor can prove that a portion of the cash was spent, then that portion must be deducted from the total. The trial court chose not to believe the testimony regarding amounts spent, however, and we find that the trial court did not abuse its discretion in this regard.

■ The court of appeals correctly recognized that the turnover statute could only reach Patricia Buller in her capacity as representative of the estate. Texas courts do not apply the turnover statute to non-judgment debtors. *See, e.g., Cravens, Dargan & Co. v. Travers Co.*, 770 S.W.2d 573, 576 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (no turnover action against State Board of Insurance for judgment debtor's licensing deposit); *Detox Industries, Inc. v. Gullett*, 770 S.W.2d 954, 956 (Tex.App.—Houston [1st Dist.] 1989, no writ) (no turnover action against non-debtor corporation to cancel stock in judgment debtor's name and reissue in creditor's name); *United Bank Metro v. Plains Overseas Group*, 670 S.W.2d 281, 284 (Tex. App.—Houston [1st Dist.] 1983, no writ) (no turnover action against corporate alter ego of judgment debtor). The trial court's original judgment imposed liability on Mrs. Buller as legal representative of her husband's estate. The judgment did not make Mrs. Buller a debtor in her individual capacity. Nonetheless, the trial court's turnover order improperly imposed liability on Mrs. Buller in her representative and individual capacities.

Based on the foregoing analysis, we reverse the judgment of the court of appeals and affirm the judgment of the trial court to the extent it orders assets turned over by Mrs. Buller in her representative capacity.

GONZALEZ, J., files concurring opinion joined by CORNYN, J.

MAUZY, J., files a dissenting opinion.

---

**4.** Mrs. Buller also argues that the trial court erred in refusing to grant her timely request for a jury trial on the substantive issues raised at the turnover hearing. The court of appeals, however, found that respondent waived her right to trial by jury by failing to meet the procedural requirements of Tex.R.Civ.P. 216. Therefore, this court need not address the question of Mrs. Buller's right to a jury trial on substantive fact issues raised at a turnover proceeding.

**5.** If the debtor refuses to turn over such assets, he may be made the subject of contempt proceedings. *Id.* sec. 31.002(c) (Vernon 1986).

GONZALEZ, Justice, concurring.

I agree that the proper standard of appellate review is abuse of discretion. However, the court glosses over the fact that Mrs. Buller only brought forward a partial statement of facts.[1] Mrs. Buller simply did not meet her burden of providing us with a sufficient record that shows that the trial court's judgment requires reversal.[2]

Even if recast under the proper standard of abuse of discretion, Mrs. Buller's complaint is still that the state of the evidence does not justify the trial court's action. Generally, points dependent on the state of the evidence cannot be reviewed in the absence of a complete statement of facts. *Lane v. Fair Stores*, 150 Tex. 566, 243 S.W.2d 683, 684 (1952). As we said in *The Englander Co. v. Kennedy*, 428 S.W.2d 806 (Tex.1968):

> The burden is on a party appealing from a trial court judgment to show that the judgment is erroneous in order to obtain a reversal. When the complaint is that the evidence is factually or legally insufficient to support vital findings of fact, or that the evidence conclusively refutes vital findings, this burden cannot be discharged in the absence of a complete or an agreed statement of facts.

*Id.* at 807. To this list I would add complaints that the trial court abused its discretion because of the state of the record. *See, e.g., Ward v. Cornyn*, 700 S.W.2d 281, 282 (Tex.App.—San Antonio 1985, orig. proceeding) (in absence of a statement of facts

of discovery hearings, no abuse of discretion could be shown); *Drozd v. McKinley*, 670 S.W.2d 405, 406–07 (Tex.App.—Corpus Christi 1984) (no abuse of discretion in division of costs absent complete record), *reversed on other grounds*, 685 S.W.2d 7 (Tex.1985); *Mercer v. Mercer*, 503 S.W.2d 395, 397 (Tex.Civ.App.—Corpus Christi 1973, no writ) (no abuse of discretion shown in division of community property without complete record). The burden for showing harmful error because of the state of the record, whether on "abuse of discretion" or "no evidence" grounds, is the same. Generally, if an appellant files a partial statement of facts, the reviewing court must presume the omitted portions of the record would have been relevant to the determination of appellant's evidentiary arguments. *The Englander Co.*, 428 S.W.2d at 807.

The absence of a complete record is not always fatal to appellate review or review by original proceeding. Since the time of *The Englander Co.*, we have amended the rules to allow for limited appeals. Tex.R. App.P. 53(d).[3] By following this rule the presumption is the reverse of that in the usual appeal, in that the appellate court will assume that nothing in the record that was not brought forward is relevant to the determination of the appeal. *Producer's Const. Co. v. Muegge*, 669 S.W.2d 717, 718 (Tex.1984). Also, a court may consider matters that are fundamentally erroneous even in the absence of a statement of facts. *Lane*, 243 S.W.2d at 684–85. Pure ques-

---

1. It is undisputed that the original trial hearing began on January 7, 1988, and was continued on February 8, 1988. Mrs. Buller's statement of facts, however, omits entirely the January 7 proceedings. In footnote 2, the court states that this hearing was "recessed to allow Mrs. Buller and her counsel to gather documentation of expenditures." Page 225. The court sidesteps the critical issue. Under the state of the record before us, we have to conclude that evidence was presented before the hearing was recessed. In its application for writ of error, petitioners asserts that evidence was presented. In her reply brief, Mrs. Buller does not dispute this statement. Thus, I think that it is erroneous for *the court* to **speculate** on this matter and to **assume** that if evidence was presented, that it was not essential to the issues on appeal.

2. Tex.R.App.P. 50(d) provides in part:
   **Burden on Appellant.** The burden is on the appellant, or other party seeking review, to see that a sufficient record is presented to show error requiring reversal.

3. Texas Rule of Appellate Procedure 53(d) provides:
   If appellant requests or prepares a partial statement of facts, he shall include in his request or proposal a statement of the points to be relied on and shall thereafter be limited to such points. If such statement is filed, there shall be a presumption on appeal that nothing omitted from the record is relevant to any of the points specified or to the disposition of the appeal. Any other party may designate additional portions of the evidence to be included in the statement of facts.

tions of law, not dependent on the evidence, may be reviewed without a statement of facts. *Segrest v. Segrest*, 649 S.W.2d 610 (Tex.1983). In a mandamus proceeding, we held that since it was undisputed that no evidence was presented at a discovery hearing, no statement of facts was necessary to determine the discovery questions. *Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex.1988) (orig. proceeding). The common thread in these exceptions is that the presence or absence of a statement of facts has no bearing on the resolution of the controlling issues. Since there was no attempt in the case at bar to limit the appeal under rule 53(d), the court of appeals should have presumed that the omitted portion of the statement of facts supported the trial court's judgment. *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990).

For these reasons, I concur in the result.

CORNYN, J., joins this concurring opinion.

MAUZY, Justice, dissenting.

The real problem underlying this cause is that Beaumont Bank chose an improper vehicle to resolve its dispute with Patricia Buller. The Texas turnover statute, Tex. Civ.Prac. &. Rem.Code Ann. sec. 31.002 (Vernon 1986 & Supp.1991), is simply an unsuitable mechanism for resolving this dispute. The majority opinion, however, effectively condones the Bank's misplaced reliance on the statute. I therefore dissent.

The inadequacy of the turnover statute in this context is patent. The majority acknowledges that the turnover statute cannot be applied to Buller in her individual capacity. All Buller needed to establish, then, was that she had spent the estate funds. Her expenditures did not need to be legitimate; any expenditure would serve, no matter how frivolous, as long as

Buller documented her spending to this court's satisfaction.[1]

Even as to any estate assets which Buller has not spent, the turnover order will ultimately prove unenforceable. The Texas Bill of Rights prohibits the trial court from enforcing the turnover order by imprisonment. Article I, section 18 of the Texas Constitution unequivocally provides that "[n]o person shall ever be imprisoned for debt." This prohibition has appeared in every version of our constitution.[2] Further, the debates of the first state constitutional convention show that the framers intended the prohibition to be even stronger than that provided in the 1836 Republic of Texas Constitution. *See* Repub.Tex. Const. Declaration of Rights § 12 (1836) ("No person shall be imprisoned for debt in consequence of inability to pay."); *Debates of the Texas Convention* 302–07 (1846). In the present case, enforcement of the turnover order by imprisonment would fall squarely within the constitutional prohibition. *See Ex parte Britton*, 127 Tex. 85, 92 S.W.2d 224, 227 (1936) ("It is not the policy of the law to enforce the collection of mere civil debts by contempt proceedings.")

Fortunately, the Texas legislature has provided a suitable remedy for the problem at hand. When the representative of an estate fails to make a court-ordered payment, the claimant's remedy properly lies under section 328 of the Texas Probate Code. *See, e.g., Fillion v. Osborne*, 585 S.W.2d 842, 844 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Section 328(b) enables a court to "cite the representative and the sureties on his bond to show cause why they should not be held liable" on the outstanding judgment. Absent a showing of good cause,

the court shall render judgment against the representative and sureties so cited,

---

1. As the court of appeals noted, the Bank failed to rebut Buller's testimony that she no longer holds estate assets. 777 S.W.2d at 765. This Court, however, chooses to disregard Buller's testimony, in part because of her behavior at trial. In effect, the majority has assumed the role of factfinder: the majority doubts the witness' veracity, and therefore deems her testimo-

ny unimportant, even in the absence of contradictory evidence.

2. *See* Tex. Const. art. I, § 18 (1876); Tex. Const. art. I, § 15 (1869); Tex. Const. art. I, § 15 (1866); Tex. Const. art. I, § 15 (1861); Tex. Const. art. I, § 15 (1845).

in favor of the holder of such claim, for the amount theretofore ordered to be paid or established by suit, and remaining unpaid, together with interest and costs, and also for damages upon the amount neglected to be paid, at the rate of five per cent per month for each month, or fraction thereof, that the payment was neglected to be paid after demand made therefor, which damages may be collected in any court of competent jurisdiction.

Tex.Prob.Code Ann. sec. 328(b) (Vernon 1971 & Supp.1991). *See* 18 M. Woodward and E. Smith, Probate and Decedents' Estates § 950 (Texas Practice 1971).

With its enactment of section 328(b), the legislature has established an appropriate procedure for determining the substantive rights of debtors and creditors in a situation such as this. The advantages of section 328(b) are manifest. By requiring notice and a hearing, section 328(b) ensures that the representative of an estate will have a fair opportunity to assert substantive rights. And by providing for personal liability, section 328(b) also ensures that a judgment creditor may have redress for misuse of estate funds. The turnover procedure, in contrast, is "purely procedural in nature," and is not amenable to the determination of substantive rights. *Steenland v. Texas Commerce Bank*, 648 S.W.2d 387, 390 (Tex.Civ.App.—Tyler 1983, writ ref'd n.r.e.).

A court should not permit a party to bypass an established statutory procedure by way of the turnover statute. *See Cravens, Dargan & Co. v. Travers Co.*, 770 S.W.2d 573, 577 (Tex.Civ.App.—Houston [1st Dist.] 1989, writ denied). In most instances, as in this case, the turnover statute will prove wholly inappropriate for resolving substantive disputes.