

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00029-CV
_____

GREAT NORTHERN ENERGY, INC., Appellant

V.

CIRCLE RIDGE PRODUCTION, INC., Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 14-0460

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Circle Ridge Production, Inc. (Circle Ridge), is attempting to collect from Great Northern Energy, Inc. (Great Northern), a money judgment it had been awarded[1] against Great Northern. Frustrated in its efforts to get post-judgment discovery from a less than fully active company, Circle Ridge sought injunctive relief and a turnover order. Within hours of filing that motion and after a brief hearing focused mainly on the discovery issues, Circle Ridge was granted a temporary injunction prohibiting Great Northern and certain officers and agents from disposing of assets. Three days later, after another brief hearing, Circle Ridge was awarded a turnover order describing, along with a broad range of other assets, causes of action against Burdick Baker in Civil Action No. 3:14-CV-00240-B, *Burdick Baker v. Great Northern Energy, Inc., et. al.*, pending in the United States District Court for the Northern District of Texas, Dallas Division (the Baker Claims), and corporate stock owned in, and causes of action against, Rangeford Resources, Inc. (the Rangeford Rights).

On appeal of both the temporary injunction and the turnover order, Great Northern asserts that the trial court's judgment was not final, that the trial court lacked jurisdiction to issue the injunction, that the trial court lacked jurisdiction over the individuals named in the injunction, that there was no evidence to support the injunction, that the injunction violates the constitutional rights

---

[1]Circle Ridge had foreclosed a lien against Great Northern on certain oil and gas leases. Circle Ridge sued Great Northern. A jury found certain factual issues in favor of Circle Ridge, a directed verdict was granted in favor of Circle Ridge on part of its claims, and, on December 7, 2015, judgment was entered for Circle Ridge against Great Northern including damages in the amount of $637,114.15, post-judgment interest, attorney fees, costs of suit, costs of collection, and statutory post-judgment interest (the December 7 Judgment). Great Northern's appeal of the December 7 Judgment is pending in this Court under cause number 06-16-00015-CV. Great Northern, however, did not file a bond or provide other security in the trial court in order to supersede enforcement of the judgment pending its appeal. *See* TEX. R. APP. P. 24.1(a), (f).

2

of the named individuals, that the injunction has no termination date, that it was error to include the Baker Claims in the turnover order, and that there is no evidence to support appointing the receiver or entering the turnover order.

We reverse the temporary injunction in its entirety and partially reverse the turnover order as set forth below, because (1) the December 7 Judgment was final,[2] and—although (2) the trial court had jurisdiction to issue the temporary injunction, and (3) the temporary injunction restrains individuals only as agents of Great Northern—(4) no evidence supported the temporary injunction, (5) the complaint about including the Baker Claims in the turnover order is moot, and (6) only as to the Rangeford Rights did any evidence support the turnover order.

*(1)    The December 7 Judgment Was Final*

Just six days before the trial in the underlying case began, Circle Ridge filed its fifth amended original petition in which it purported to join three additional defendants, WJ SouthWaskom #1, LLC, Topcat Oilfield Transport, LLC, and the United States of America (the "Newly-Named Defendants").[3]  Circle Ridge alleged that each of the Newly-Named Defendants was asserting claims that were clouds on its title.  Nothing in the record suggests that any of the Newly-Named Defendants were served with citation before the trial began or that any of them either filed an answer before trial or appeared at trial.[4]

---

[2]The finality of the trial court's judgment gives us appellate jurisdiction. *See, e.g., In re Commitment of Richards*, 202 S.W.3d 779, 784 (Tex. App.—Beaumont 2006, pet. denied).

[3]There is no evidence in the appellate record that leave of court was obtained before filing the fifth amended petition. *See* TEX. R. CIV. P. 63.

[4]The trial of this case began October 19, 2015.  The record shows that only the United States of America filed an answer, but not until February 2, 2016.

Great Northern asserts that post-judgment remedies were not available because the December 7 Judgment was not final, on account of the Newly-Named Defendants' alleged claims against Circle Ridge's title. Great Northern also argues that, since Circle Ridge did not establish its title against the Newly-Named Defendants, the December 7 Judgment is interlocutory.

Great Northern has not offered any authority that, by our reckoning, supports its arguments, and we have found none. The two cases cited by Great Northern do not support either of its arguments. *See Hunt v. Heaton*, 643 S.W.2d 677 (Tex. 1982); *Allen v. Sharp*, 233 S.W.2d 485 (Tex. Civ. App.—Dallas 1950, writ ref'd).

If a judgment "disposes of all pending parties and claims in the record," it is a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Further, there must be a clear indication in the judgment "that the trial court intended . . . to completely dispose of the entire case." *Id.* at 205. As we more fully addressed in our opinion on Great Northern's mandamus petition, when a judgment expressly disposes of all defendants, except those who have not been served and have not answered, and nothing in the record indicates the plaintiff expected to obtain service on the unserved defendants, the judgment is a final judgment. *In re Great N. Energy, Inc.*, No. 06-16-00030-CV, 2016 WL 3068629, at *2–3 (Tex. App.—Texarkana May 31, 2016, orig. proceeding) (citing *In re Sheppard*, 193 S.W.3d 181, 187 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding)). In such a case, the plaintiff has effectively discontinued its claims against the unserved defendants. *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962).

As we noted in our opinion in the mandamus action, by choosing to proceed with trial without serving the Newly-Named Defendants, Circle Ridge indicated its intent to abandon its

4

claims against them. *Great N. Energy, Inc.*, 2016 WL 3068629, at *3. Further, there is no evidence in the record that the Newly-Named Defendants were served before trial or before the entry of the final judgment. Therefore, Circle Ridge effectively discontinued its claims against the Newly-Named Defendants. *See Penn*, 363 S.W.2d at 232. As such, the Newly-Named Defendants were effectively not parties to this suit. And, since the Newly-Named Defendants were not parties to the suit, their claims, if any, are not affected by the judgment. *See Ramirez v. Wood*, 577 S.W.2d 278, 286 (Tex. Civ. App.—Corpus Christi 1978, no writ) (judgment in trespass-to-try-title suit not binding on any non-party); *Farhart v. Blackshear*, 434 S.W.2d 395, 398–99 (Tex. Civ. App.— Houston [1st Dist.] 1968, writ ref'd n.r.e.) (unserved defendants in trespass-to-try-title suit not bound by judgment).

The December 7 Judgment expressly disposes of all claims and all parties. Further, after specifically disposing of the specific claims of the parties, the judgment recites that "[a]ll relief requested in this case and not expressly granted is denied. This judgment finally disposes of all parties and claims and is appealable." Except for the Newly-Named Defendants, Great Northern does not contend that the judgment does not dispose of all claims and parties.

The December 7 Judgment was final.

*(2)*      *The Trial Court Had Jurisdiction to Issue the Temporary Injunction*

Great Northern's attack on the injunctive relief employs five different arguments. One of those challenges the trial court's jurisdiction on the basis that the injunction was granted after the court's plenary jurisdiction had expired. *See* Tex. R. Civ. P. 329b(e). Circle Ridge responds that

5

the trial court retains jurisdiction to enforce its judgment even after its plenary jurisdiction expires. Here, we agree with Circle Ridge.

We review the granting of a post-judgment injunction under an abuse of discretion standard. *See In re Cantu de Villarreal*, No. 13-08-00408-CV, 2009 WL 888467, at \*5 (Tex. App.—Corpus Christi Apr. 2, 2009, pet. denied) (mem. op.). Under this standard, the trial court will be reversed "only if we determine that it acted in an unreasonable or arbitrary manner, without reference to any guiding rules and principles." *W.T.J. v. S.L.S.*, No. 03-10-00335-CV, 2012 WL 3793333, at \*3 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)).

Great Northern's motion for new trial was overruled February 22, 2016. More than thirty days later, on March 28, 2016, the trial court granted injunctive relief to Circle Ridge. The authority, under Rule 329b(e) of the Texas Rules of Civil Procedure, of the trial court to vacate, modify, correct, or reform its judgment or to grant a new trial expires thirty days after a motion for new trial is overruled by a written and signed order. Tex. R. Civ. P. 329b(e). A trial court, however, has power beyond Rule 329 to enforce its judgment. *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982). Generally, a trial court has the inherent power to enforce its judgments, even after its plenary power ceases, and it may employ suitable methods to do so. *Kennedy v. Hudnall*, 249 S.W.3d 520, 523 (Tex. App.—Texarkana 2008, no pet.) (citing Tex. R. Civ. P. 308; *Arndt*, 633 S.W.2d at 499; *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979)).

In its motion for turnover order and motion for temporary injunction, Circle Ridge sought an injunction pursuant to Rule 680 through Rule 693 of the Texas Rules of Civil Procedure and

6

Section 31.002 of the Texas Civil Practice and Remedies Code. *See* Tex. R. Civ. P. 680–693; Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (West 2015). Section 31.002, which authorizes the granting of a post-judgment injunction, is an aid to the enforcement of the trial court's judgment, and the trial court has continuing jurisdiction over such matters as set forth in the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a); *Arndt*, 633 S.W.2d at 499. The trial court had jurisdiction to issue a temporary injunction.

*(3)     The Temporary Injunction Restrains Individuals Only as Agents of Great Northern*

Great Northern, however, attacks the injunction also on the basis that (1) the trial court lacked jurisdiction over the named individuals, and (2) the terms of the injunction violated the named individuals' constitutional protections against illegal seizures of property. Great Northern's arguments spring from its contention that the injunction restrains the named individuals' rights to use or spend their personal assets. Circle Ridge responds that the injunction applies to the named individuals only in their capacity as officers, employees, or attorneys of Great Northern. In a connected argument, it also asserts, without citation to authority, that Great Northern lacks standing to assert the named individuals' personal complaints.

This issue requires us to construe the temporary injunction to determine whether it restrains the named individuals in the use of their individual property or whether it is limited to property of Great Northern. We conclude that it is the latter.

A court order should be construed using the same rules of interpretation as are applicable for other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (orig. proceeding). If possible, we will construe the order so that each provision is given

7

meaning. *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011). Only where the order's terms are susceptible to more than one reasonable interpretation is the order ambiguous. *Id.*; *Fair*, 467 S.W.2d at 404–05. If the order is ambiguous, then we "adopt the construction that correctly applies the law." *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam).

We turn to the language of the injunction. The temporary injunction begins with a recitation of the trial court's findings that Circle Ridge previously prevailed in its causes of action against Great Northern and that, if certain acts are not restrained, "Plaintiff will suffer irreparable injury because assets of Defendant will no longer be available for execution" to collect the December 7 Judgment. "Restrained Parties" is defined to include both Great Northern and "all of its officers, employees, independent contractors, attorneys, brokers and agents." The order then restrains

> the Restrained Parties from disposing, selling, mortgaging, destroying, or using as collateral, any assets, including tangible personal property, real estate, notes receivable, accounts receivable, stocks, bonds, securities, cash, bank accounts, mutual funds, and any other tangible item or thing of value . . . until the debt pursuant to the Judgment entered by this Court has been paid in full.

The order also provides that "[t]he parties restrained specifically include Joseph Brent Loftis, Ronald J. Abercrombie, Nicole L. Martin, and William J. Gardner" (the Named Individuals). Great Northern does not dispute that the Named Individuals are, or have been, officers, employees, or attorneys for Great Northern.

Although the operative language of the order lacks some clarity, when construed with the trial court's findings, it is apparent that the order intends to reference the named individuals only for the same purpose as the rest of the "Restrained Parties," which consists, generally, of Great

8

Northern and its officers, employees, and attorneys. As such, we interpret the order to unambiguously restrain the named individuals only in their capacity as officers, employees, or attorneys for Great Northern and only as to Great Northern assets.[5] Since the personal rights of the named individuals are not impacted by the injunction, we need not address Circle Ridge's argument that Great Northern lacks standing.

*(4)    No Evidence Supported the Temporary Injunction*

Great Northern asserts that there is no evidence authorizing the temporary injunction. It argues that, without evidence showing the assets of Great Northern had been illegally used or spent, no evidence supported the issuance of an injunction.[6] *See* TEX. R. CIV. P. 683. In its motion for turnover order and motion for temporary injunction, Circle Ridge sought an injunction pursuant to Rule 680 through Rule 693 of the Texas Rules of Civil Procedure and Section 31.002 of the Texas Civil Practice and Remedies Code. *See* TEX. R. CIV. P. 680–693; TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a).

To obtain a temporary injunction under Rule 683, the applicant must plead and prove "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204

---

[5]Even if we were to hold that the injunction is ambiguous, the result would be the same, since we must "adopt the construction that correctly applies the law." *MacGregor,* 941 S.W.2d at 75. The remedies available under Section 31.002, including an injunction, are not available to obtain relief from persons who are not parties to the judgment. *See Buller*, 806 S.W.2d at 226. Therefore, an injunction could not lawfully be entered against the named individuals in their individual capacities. *See id.*; *Turner Bros. Trucking, L.L.C. v. Baker*, 396 S.W.3d 672, 674–75 (Tex. App.—Dallas 2013, no pet.).

[6]Circle Ridge also claims that the temporary injunction is authorized as part of its relief under the turnover statute. We address that claim later in this opinion when we address the other relief granted under the turnover statute.

9

(Tex. 2002). A temporary injunction is not available "unless the applicant offers competent evidence in support of his or her application to the trial court at the hearing on the temporary injunction." *Bay Fin. Savings Bank, FSB v. Brown*, 142 S.W.3d 586, 589–90 (Tex. App.— Texarkana 2004, no pet.) (citing *Millwrights Local Union No. 2484 v. Rust Eng'g. Co.*, 433 S.W.2d 683, 686–87 (Tex. 1968)). In a post-judgment context, the entry of the judgment against the defendant establishes the first two elements. *Emeritus Corp. v. Ofczarzak*, 198 S.W.3d 222, 227 (Tex. App.—San Antonio 2006, no pet.). In its application, Circle Ridge sought to enjoin Great Northern from "disposing, selling, mortgaging, destroying, [or] using as collateral, any assets." Therefore, to satisfy the third element, Circle Ridge was required to offer evidence at the hearing that Great Northern had unlawfully engaged in one or more of these acts.

On March 28, 2016, Circle Ridge served Great Northern with its motion for turnover order and motion for temporary injunction, and set it for hearing that same day. The motion alleged that Great Northern had in its possession or control:

1.  2006 Chevrolet Pickup, Texas License Number BJFS068, VIN #1GCEC19VS6Z244149;

2.  2005 Honda All-Terrain Vehicle, VIN #1HFTE250054409043;

3.  2006 Chevrolet SUV, Texas License Number BGK7932, VIN #2GCECI3Tl61174617;

4.  2000 Lincoln Sedan, Texas License Number BLF6520, VIN #1LNHM82W2YY871238;

5.  [the Baker Claims];

6. [and] 7.  [the Rangeford Rights]; and

8.  All assets referred to in the Attached Exhibit "A."

10

Exhibit "A" attached to the motion consisted of various documents purporting to be those of Great Northern, including its statements of financial condition from 2011 and 2012, and its statement of hard assets dated 2012. The motion was unverified, and the documents attached as Exhibit "A" were unsupported by affidavit. A hearing on the temporary injunction was held that day. At the hearing, Great Northern's and Circle Ridge's attorneys argued about whether Great Northern had complied with the trial court's motion to compel discovery by providing Circle Ridge with an electronic copy of Great Northern's financial data. Circle Ridge did not assert that Great Northern had not produced the disc, thumb drive, or computers as required by the trial court's order. Rather, Circle Ridge's complaint was that it could not access the electronic data.

The only evidence offered at the hearing was the testimony of Eric Edwards and Loftis. Edwards testified that he is an IT technician with Business Computer Solutions and that he had been retained by the attorney for Great Northern to replicate information off of a computer belonging to Great Northern and Loftis, with no restrictions. Edwards also testified that he had downloaded a full replica of the data from the computer onto the attorney's hard drive. Edwards testified that there was software from Aries on the computer that could be opened using Microsoft Access. On cross-examination, Edwards stated that he only transferred the data, so he could not represent that it included the accounting records of Great Northern. He acknowledged that it may not be accessible if the software had been updated. He said that he could not guarantee that he would be able to access the information with Microsoft Access, and he agreed that, if data had been deleted, it would not have been transferred. Circle Ridge's attorney then advised the court

11

that he was reserving any further questions until his assistant arrived with his laptop and the thumb drive produced by Great Northern, apparently to determine whether Edwards could access the data.

Loftis testified that Great Northern initially used a program called Aries for its accounting and later hired Eddye Dreyer to take over accounting. He said that the accounting information would also be available from Dreyer. He also testified that a small central processing unit was supplied to Circle Ridge's attorney. He testified that Great Northern had no other computers other than his laptop. Loftis denied that Great Northern was hiding assets and stated that it did not have any money. He also denied that Great Northern owned the assets listed in the motion for turnover order and motion for injunction. On cross-examination, Loftis testified that he did not know the source of the funds used to pay the court reporter. He also testified that Elena Michel, with accounting firm Eddye Dreyer, was the last person to handle Great Northern's accounting, and that Abercrombie was the person at Great Northern who would be the most knowledgeable about its accounting functions. He testified that Great Northern's banking accounting was done on Quickbooks and that he had contacted Kaley Miner to obtain the user name and password, who told him that she did not remember the password and that she no longer had access to it. He also testified that he had not asked Abercrombie for this information.

Neither the documents attached to the motion, nor any testimony supporting them, were introduced into evidence. At this point in the hearing, the trial court stated that it had heard enough and was granting the temporary injunction. In its order, the trial court recites that the facts set forth in the motion for temporary injunction support the entry of the injunction.

Pleadings and attachments to pleadings are not evidence, unless they are offered and admitted into evidence. *Tex. Dep't of Public Safety v. Sowell*, No. 11-10-00018-CV, 2011 WL 3359716, at *1 (Tex. App.—Eastland Aug. 4, 2011, no pet.) (mem. op.); *Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 724–25 (Tex. App.—San Antonio 2004, no pet.). Further, none of the testimony at the injunction hearing shows that Great Northern was unlawfully disposing of, selling, mortgaging, destroying, or using any of its assets as collateral. Although Circle Ridge's attorney expressed his suspicion that Great Northern was conspiring to hide its assets, his remarks are not evidence.[7] *See Brown*, 142 S.W.3d at 590.

Circle Ridge contends that the injunction is supported by evidence previously presented at the March 22, 2016, hearing on its motion to compel discovery.[8] We disagree.

On March 22, 2016, the trial court heard Circle Ridge's motion to compel post-judgment discovery responses in aid of judgment and for sanctions. At that hearing, the only evidence offered was the testimony of Loftis, president of Great Northern. Loftis testified that he had received a request to produce the electronic accounting files of Great Northern, but that they were on a computer he could not access. He explained that a computer company had been retained to retrieve the records and that they were now able to produce them. He also testified that the paper files of Great Northern were intermixed with the files of four other companies, and that once

---

[7]The trial court ended the hearing before it was determined whether Edwards would be able to access the data on the thumb drive. Therefore, it is unknown whether Great Northern's accounting data, claimed to be on the thumb drive, was subsequently available to Circle Ridge. In addition, the temporary injunction was entered two days before Great Northern was required to produce the boxes of files and documents under the order compelling production. This hardly supports a conclusion that Great Northern was attempting to hide its assets.

[8]The reporter's record of the March 22, 2016, hearing was not included in the original record, but the court reporter supplemented the record with the reporter's record of the hearing at the request of Circle Ridge.

13

separated, they would comprise about one hundred bank boxes. Loftis testified that Great Northern had been inactive for many months. He denied that Great Northern owned any vehicles, and said that three vehicles it had owned had been given to the employees that were using them and to its former attorney, with the titles transferred to them within the last six to eight months.

The trial court granted the motion to compel and entered an order requiring Great Northern to produce to Circle Ridge: (1) a disc identified in the hearing at or before 2:00 p.m. on March 22, 2016; (2) its two computers and hard drives, without alteration or deletion of any information, no later than 5:00 p.m. on March 23, 2016; and (3) the boxes of files and documents identified at the hearing at or before 5:00 p.m. on April 1, 2016.

Even assuming the testimony from the March 22 hearing could be considered,[9] as Circle Ridge contends, there is still no evidence of Great Northern unlawfully disposing of its assets. Although Loftis testified that Great Northern had transferred ownership of some vehicles to its employees six to eight months before the hearing, no testimony was elicited regarding the reasons for the transfers or establishing that they occurred without suitable consideration. Without more, the trial court could only speculate regarding the reasons for the transfers. Therefore, we find that there was no evidence to support the granting of a temporary injunction under Rule 683.

Circle Ridge also claims that its relief under the turnover order supports the temporary injunction. We disagree.

---

[9]Neither the trial court's remarks at the injunction hearing nor its order indicate that it considered the testimony from any prior hearing.

14

Under the turnover statute, a judgment creditor may obtain injunctive relief from the trial court to satisfy its judgment. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a), (b)(1) (West 2015). To obtain an injunction under the turnover statute, the traditional evidentiary requirements for granting an injunction under Rule 683 are not applicable. *Henderson v. Chrisman*, No. 05-14-01507-CV, 2016 WL 1702221, at \*5 (Tex. App.—Dallas Apr. 27, 2016, no pet.). Rather, the evidentiary requirements are the same as those required to obtain relief under the turnover statute. *See id.*; *W.T.J.*, 2012 WL 3793333, at \*3, 5). To obtain relief, the turnover statute requires the judgment creditor to prove that the judgment debtor owns property, that the property cannot be readily attached or levied on by ordinary legal means, and that it is not exempt from attachment, execution, or seizure. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a)(1), (2); *Henderson*, 2016 WL 1702221, at \*3; *W.T.J.*, 2012 WL 3793333, at \*3; *Clayton v. Wisener*, 169 S.W.3d 682, 683–84 (Tex. App.—Tyler 2005, no pet.). The injunction was issued March 28 and must stand or fall on the basis of the evidence before the trial court at that time. We find no evidence in this record supporting the injunction under the turnover statute.[10]

---

[10]The hearing regarding the turnover order was held March 31, and, though, again, little or no evidence was adduced, there was a judicial admission as to the Rangeford Rights, which we describe and address later in this opinion. But that judicial admission occurred March 31 and cannot be used to even partially support the temporary injunction issued March 28.

Since there was no evidence to support the injunction,[11] the injunction was improperly issued.[12] *See W.T.J.*, 2012 WL 3793333, at \*5; *Brown*, 142 S.W.3d at 590.

*(5)*      *The Complaint about Including the Baker Claims in the Turnover Order Is Moot*

Among its various arguments against the turnover order and appointment of receiver, Great Northern asserts that the trial court erred in including the Baker Claims in the turnover order. This argument was fully addressed in our opinion on Great Northern's writ of mandamus. *See Great N. Energy, Inc.*, 2016 WL 3068629, at \*4–6. In that opinion, we conditionally granted Great Northern's writ of mandamus with respect to the Baker Claims. *Id.* at \*6. Therefore, any complaint regarding the Baker Claims is moot. We overrule this point of error as to the Baker Claims.

---

[11]Circle Ridge also argues that, since Great Northern had twice been ordered by the trial court to respond to post-judgment discovery, sufficient evidence justified the trial court's entry of an injunction under Section 52.006 of the Texas Civil Practice and Remedies Code and Rule 24.2 of the Texas Rules of Appellate Procedure. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(e) (West 2015); TEX. R. APP. P. 24.2(d). We disagree that such statute and rule provide authority for the injunction issued here. Certainly, a trial court may enjoin a judgment debtor as part of its orders establishing the security necessary to suspend the execution of a judgment during the appeal of the judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 52.001, 52.006(a)–(e) (West 2015); TEX. R. APP. P. 24.1, 24.2(a)–(d). And, although the judgment in this case is on appeal, it is undisputed that Great Northern has not sought to suspend the enforcement of the judgment. Also, the order granting the injunction does not comply with the requirement of Section 52.006(e) and Rule 24.2(d) that the court "not make any order that interferes with the judgment debtor's use, transfer, conveyance, or dissipation of assets in the normal course of business." TEX. CIV. PRAC. & REM. CODE ANN. § 52.006(e); TEX. R. APP. P. 24.2(d). Therefore, we conclude that the temporary injunction was not granted under the authority of Section 52.006(e) or Rule 24.2(d).

[12]Since we have found that the injunction was issued with no evidentiary support, we need not address Great Northern's fifth argument attacking the injunction's alleged lack of a termination date.

*(6)     Only as to the Rangeford Rights Did any Evidence Support the Turnover Order*

Great Northern also asserts that the turnover order and the associated appointment of a receiver are improper because there is no evidence to support either.[13]  Circle Ridge responds that, at the turnover hearing, Great Northern's attorney admitted that Great Northern owned vehicles that are still titled in its name and that it owned the Rangeford Rights.  In addition, Circle Ridge points to contradictory testimony given by Loftis and Great Northern's attorney regarding the source of the funds used to pay the court reporter as evidence that it had assets.

Paragraph 1 of the turnover order required Great Northern to deliver to the sheriff the four vehicles identified in Circle Ridge's motion.  Paragraph 2 of the order required Great Northern to deliver to the receiver named in the order:

a.      [the Baker Claims];

b.      Great Northern Energy, Incorporated's causes of action against Prenwell, LLC as described in the deposition of Joseph Brent Loftis in deposition in this Cause;

c.      Great Northern Energy, Incorporated's causes of action against Rangeford Resources, Inc. as described in the deposition of Joseph Brent Loftis in deposition in this Cause;

d.      All of those items listed on Exhibit A, filed under seal, attached to Movant's Motion for Turnover Order and Temporary Restraining Order;

---

[13]In its original brief, Great Northern mistakenly repeated verbatim its argument relating to the Baker Claims under this sub-point of error.  In its brief, Circle Ridge asserted that this was briefing error and asked this Court to overrule this sub-point on that basis.  However, Circle Ridge also incorporated its response to the petition for writ of mandamus, our cause number 06-16-00030-CV.  Subsequently, Great Northern filed a reply brief asking this Court to incorporate its petition for writ of mandamus on this issue, and also setting forth its argument in support of this sub-point of error. Rule 38.7 allows a brief to be "amended or supplemented whenever justice requires." TEX. R. APP. P. 38.7.  Therefore, in the interest of justice, we construe Great Northern's reply brief to be a motion to supplement its brief, which we grant, and supplemental brief on this sub-point.  In order not to delay the issuance of this opinion, and since the supplemental brief makes the same argument Great Northern asserted in its petition for writ of mandamus regarding this sub-point, we have not asked Circle Ridge for additional briefing.  Instead, we will grant its request to incorporate that portion of its response to the petition for writ of mandamus filed in our cause number 06-16-00030-CV.

e.      All certificates of title to property turned over;

f.      All corporate share certificates to property turned over;

g.      All insurance policies to property turned over;

h.      All promissory notes evidencing receivables or debts attached to property turned over, or otherwise;

i.      All income or payments received by Great Northern Energy, Incorporated from December 7, 2016 until payment of the judgment has been completed in full;

j.      Deeds or leases to the property turned over in the event of real property;

k.      Certificates of stock to property turned over;

l.      Property that is in the debtor's possession or is subject to the debtor's control that is not herein subject to being delivered to the Sheriff or Constable;

m.      All other assets, including tangible personal property, real estate, notes receivable, accounts receivable, stocks, bonds, securities, cash, bank accounts, mutual funds, and any other tangible item or thing of value owned by, or in the control of, Great Northern Energy, Incorporated.

Section 31.002 authorizes a turnover order only on proof that the judgment debtor[14] owned

non-exempt property not readily subject to execution or levy. *Henderson*, 2016 WL 1702221, at

---

[14]In addition to the facts required to be shown under the turnover statute, Great Northern argues that Circle Ridge failed to show that the judgment remained unsatisfied. Great Northern asserts that evidence must be introduced showing the non-satisfaction of the judgment, citing *Anoco Marine Industries, Inc. v. Patton Production Corp.*, No. 2-09-210-CV, 2010 WL 1426869 (Tex. App.—Fort Worth Apr. 8, 2010, no pet.) (mem. op.). In *Anoco Marine*, Patton Production Corporation sought a turnover order regarding certain funds allegedly held in an Oklahoma court's registry. Anoco Marine filed a response alleging that the Oklahoma court had already disbursed the funds to Patton Production, thereby satisfying its judgment. *Id.* at *1. After a hearing, the trial court ordered Anoco Marine to, *inter alia*, turn over its interest in the funds allegedly held in the Oklahoma court's registry to Patton Production. *Id.* at *1–2. On appeal, the Fort Worth Court of Appeals noted that, by its terms, the turnover statute "requires an outstanding, unsatisfied judgment as the basis for a turnover order." *Id.* at *2–3; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) ("A *judgment creditor* is entitled to aid from a court of appropriate jurisdiction . . . to reach property *to obtain satisfaction on the judgment.*" (emphasis added)). The court of appeals held that the trial court had abused its discretion because Patton Production had not proven that the judgment remained unsatisfied or that any unreleased

18

*3; *W.T.J.*, 2012 WL 3793333, at *3; *Clayton*, 169 S.W.3d at 683–84. We review a grant of turnover relief under an abuse-of-discretion standard. *See Buller*, 806 S.W.2d at 226; *Clayton*, 169 S.W.3d at 683. Even if the turnover order is predicated on an erroneous conclusion of law, it will not be reversed if the order is sustainable for any reason. *Buller*, 806 S.W.2d at 226. Whether there is evidence to support the granting of relief is a relevant consideration in our determination of whether there was an abuse of discretion. *Buller*, 806 S.W.2d at 226; *Clayton*, 169 S.W.3d at 683. While the turnover statute does not require the evidence supporting the motion to be in any particular form, some evidence must be admitted that establishes the requirements of the statute before relief may be granted. *Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Relief is not available under the turnover statute if there is no probative and substantive evidence to support it. *Clayton*, 169 S.W.3d at 683 (citing *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 324 (Tex. App.—Dallas 1997, pet. denied)).

On March 31, 2016, the trial court heard Circle Ridge's motion for a turnover order. At the hearing, no evidence was introduced supporting the allegations regarding the property controlled or possessed by Great Northern.

---

money remained in the registry of the Oklahoma court at the time the turnover order was signed. *Anoco Marine Indus., Inc.*, 2010 WL 1426869, at *1–2.

We agree with the Fort Worth court that a turnover order may be issued only when there is an unsatisfied judgment. However, in *Anoco Marine*, the defendant placed this in issue by alleging that the funds had already been disbursed to Patton Production and that the judgment had been satisfied. In this case, there have been two motions to compel with hearings, a hearing on the motion for injunction, and a hearing on the motion for turnover order, yet Great Northern never alleged, either in writing or orally to the trial court, that the judgment has been satisfied. Under these circumstances, we cannot say that the trial court abused its discretion in finding that the judgment remained unsatisfied.

19

Circle Ridge called the attorney for Great Northern to testify as its only witness. He testified that he had received a $5,000.00 cash payment from Loftis to pay the court reporter. He also testified that he did not know the source of the funds, but that it probably came from Loftis' personal funds. At the conclusion of his testimony, the trial court stated that it was going to grant the turnover order based on Loftis' prior representation that he had no idea where the money came from that was paid to the court reporter.

In addition, Circle Ridge points to contradictory testimony given by Loftis and Great Northern's attorney regarding the source of the funds used to pay the court reporter as evidence that it has assets. This, it argues, supports the issuance of the turnover order.

Initially, we note that, although the testimony of Loftis and Great Northern's attorney as to the source of the funds used to pay the court reporter is conflicting, there is nothing in the testimony of either of these individuals that supports a finding that the funds came from Great Northern. Therefore, this testimony does not support the entry of the turnover order.

As previously noted, there was no testimonial or documentary evidence showing that Great Northern owned any of the property specifically identified in the order, any other property, or any income or payments received by Great Northern. In addition, as we have previously seen, there was also no evidence from the March 22 or March 28 hearings that provided this proof.

However, during his argument, Great Northern's attorney represented to the trial court that Great Northern did not have possession of the Rangeford stock, but that it was in escrow in Florida. He also argued that it was important that the stock not be seized because it might impair any causes of action against Rangeford. Also in his argument, Great Northern's attorney confirmed Loftis'

20

prior testimony regarding the location of three vehicles. Circle Ridge argues that Great Northern's attorney admitted that Great Northern owned vehicles that are still titled in its name, that it owned stock in Rangeford Resources held in escrow, and that Great Northern owns a cause of action against Rangeford Resources.

A statement of fact that conclusively disproves the speaker's right of recovery or asserted defense is a judicial admission. *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 740 (Tex. App.—Houston [14th Dist.] 1998, no pet.). A statement may be a judicial admission when (1) it is made during a judicial proceeding, (2) it is contrary to an essential fact of the party's recovery or defense, (3) it is clear, deliberate, and unequivocal, (4) it is concerning a fact on which judgment for the opposing party could be based, and (5) enforcement of the admission is consistent with public policy. *Id.* (citing *Sepulveda v. Krishnan*, 839 S.W.2d 132, 135 (Tex. App.—Corpus Christi 1992), *aff'd*, 916 S.W.2d 478 (Tex. 1995). If an attorney's statements on behalf of his or her client satisfy these criteria, they may be deemed judicial admissions. *Id.* (citing *Sepulveda*, 839 S.W.2d at 135).

Great Northern's attorney clearly and unequivocally acknowledged Great Northern's interest in the Rangeford Resources stock and its cause of action against Rangeford Resources, that is, collectively, the Rangeford Rights.[15] He represented to the trial court that Great Northern did not possess the Rangeford stock, but that it was in escrow in Florida. He also argued that it was important that the stock not be seized because it might impair Great Northern's cause of action

---

[15]The remarks of Great Northern's attorney regarding the three vehicles discussed merely the location of the vehicles. Further, the attorney did not make any clear and unequivocal statement acknowledging Great Northern's ownership, possession, or control of the vehicles. Therefore, those statements do not rise to the level of a judicial admission.

against Rangeford Resources. Since these statements are contrary to Great Northern's position and would support a turnover order regarding this property and because such a turnover order is not against public policy, those judicial admissions support a finding that Great Northern owned the Rangeford Rights. Further, neither corporate stock nor a cause of action is exempt from execution or attachment. *See Childre v. Great Sw. Life Ins. Co.*, 700 S.W.2d 284, 288 (Tex. App.—Dallas 1985, no writ); *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 627 (Tex. App.—Fort Worth 2006, pets. denied). The admission also demonstrated that the stock was being held by a third party out of state, a fact sufficient to establish that it could not be readily attached. *See Childre*, 700 S.W.2d at 288. Therefore, there was evidence to support the issuance of a turnover order regarding the Rangeford Rights.

Beyond the Rangeford Rights, however, there is no evidence that Great Northern owned anything else. Therefore, the turnover order was improper as to any property beyond the Rangeford Rights.[16] Consequently, we sustain this part of the point of error.[17]

---

[16]We recognize that the turnover statute allows the trial court to enter a turnover order without identifying the specific property subject to the order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(h) (West 2015). However, nothing in the statute allows the entry of such an order without evidence to support it.

[17]Although Great Northern asserted in its point of error that it was also challenging the evidentiary basis for the appointment of a receiver, it did not address this point in its argument with appropriate citations to authority. *See* TEX. R. APP. P. 38.1(i). Therefore, it has forfeited this portion of its point of error. *See Moseley v. Arnold*, 486 S.W.3d 656, 660 n.5 (Tex. App.—Texarkana 2016, no pet.).

To conclude, we reverse the trial court's order granting the injunction and dissolve the writ of injunction. In addition, we reverse in part the trial court's turnover order; specifically, we reverse Paragraph 1 and Paragraph 2, sub-parts b, d, e, g, h, j, and l of the turnover order in their entirety. We also reverse Paragraph 2, sub-parts f, i, k, and m, except insofar as they relate to the Rangeford Resources stock or to Great Northern's causes of action against Rangeford Resources. We dismiss Great Northern's appeal as to Paragraph 2a of the turnover order as moot. In all other respects, the trial court's turnover order is affirmed.

Josh R. Morriss III
Chief Justice

Date Submitted:     August 18, 2016
Date Decided:       September 28, 2016

23