In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00109-CV
_____

**YESSIKA SANCHEZ, Appellant**

**V.**

**KRISTIN BRAYE, Appellee**

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-195,641**

**MEMORANDUM OPINION**

Yessika Sanchez (Sanchez or Appellant) appeals the trial court's denial of her motion for new trial after a jury entered a take-nothing judgment in favor of Kristin Braye (Braye or Appellee). Sanchez alleged she sustained personal injuries from an automobile accident. Sanchez filed a motion for new trial arguing that the jury's failure to find that the negligence of Braye proximately caused the accident was so contrary to the great weight and preponderance of the evidence that it was wrong and clearly unjust. Braye filed a response to the motion. After a hearing, the trial

court signed an order denying the motion, and Sanchez appealed. Finding the trial court did not abuse its discretion in denying Sanchez's motion for new trial, we affirm the trial court's judgment.

Background

Sanchez alleged that her injuries and damages were proximately caused by Braye's negligence. Sanchez also pleaded that Braye's conduct was "characterized by 'malice' and/or gross negligence" and Sanchez also sought exemplary damages. Sanchez's petition sought damages in an amount "over a $1,000,000.00."

Sanchez testified at trial that on the day of the accident her husband, William Wilson, was driving and she was a passenger as they were leaving the Costco store on I-10 in Houston. She explained that they were driving on the feeder road, took a right turn onto Richmond, then merged over to the far-left lane to take a left turn at the next street light at Rice Boulevard to go to Sam's Club. She heard Wilson gasp and then their vehicle hit a car. According to Sanchez, after the collision, Braye, the driver of the other vehicle involved in the collision, got out of her car and said, "I couldn't see. So, I just went."

During the testimony of William Wilson, he indicated on a diagram admitted into evidence that the vehicle he was driving on the day of the accident was in the far-left lane before approaching another left turn lane for vehicles making an

2

unprotected left turn across traffic at the same place where Braye was making the U-turn. Wilson testified that a black Hummer was waiting there to make a left turn at the time of the collision. According to Wilson, he was going below the posted speed limit of thirty-five miles per hour at the time of impact and that up until Braye pulled out he had not seen her vehicle. Wilson indicated that the left front driver's side of the vehicle he was driving collided with Braye's vehicle's passenger side front tire area. Wilson testified that he did everything he could to stop and avoid the accident, he had very little time to avoid the impact, and at the point of impact he "instinctively moved to the right slightly." According to Wilson, after the collision he heard Braye say, "I couldn't see. So, I went." Wilson testified that Braye was at fault in causing the collision and that the officer at the scene agreed.

Officer David Phan with the Houston Police Department testified that he was working patrol on the day of the accident, that he was notified of the accident and arrived at the scene almost two hours after the collision occurred because of the priorities of calls, and that he completed the accident report in this case. Officer Phan testified that Wilson was driving a white Acura and Braye was driving a white Nissan Altima. Officer Phan testified that Wilson told him that he was travelling west on Richmond in the far-left lane and that Braye's vehicle turned left in front of his vehicle, causing the collision. Officer Phan explained at trial that Braye told him

3

that she was driving eastbound on Richmond, made a U-turn onto westbound Richmond, and did not see the white Acura approaching. According to Officer Phan, no one reported any injuries. Officer Phan agreed that there was a turning lane in the area of the collision. Officer Phan noted in the accident report that Braye's vehicle failed to yield the right-of-way and made a U-turn in front of Wilson's vehicle, striking Wilson's vehicle in the right front portion of the vehicle. Officer Phan testified that it was "clear-cut" that Braye violated the law in failing to yield the right-of-way making the U-turn, and that because she made the decision "to turn without clear out the street," that "it would be her fault, regardless of what happened to the other vehicle." Braye received a citation for failing to yield the right-of-way. Officer Phan testified that both cars were drivable after the accident and that he did not perform an accident reconstruction because the accident was classified as a minor accident. Photographs of the vehicles after the accident that were taken at the accident scene were admitted into evidence.

Kristin Braye testified she was driving a two-door Nissan Altima when she was involved in the collision. According to Braye, she and her passenger were on their way to eat and were trying to decide where they were going to eat. Braye testified that after the protected intersection she realized she needed to turn around, that she did not know where the next stoplight would lead to, so she came to a

4

complete stop and made a U-turn at a grass median where there were no signs prohibiting a U-turn. According to Braye, there was a four-door gray sedan facing her and in front of her waiting to turn left, and that there was no Hummer in that lane. Braye testified that nothing blocked a significant portion of her view of oncoming traffic and that she would not have pulled out if a large vehicle had been there, making it impossible for her to see oncoming traffic. Braye testified that if she had known that a white Acura was coming towards her, she would not have pulled out. Braye testified that she heard Wilson's testimony that after he made a right turn on Richmond he started making lane changes over to the left, Braye agreed that the pictures of the area depict three or four lanes of oncoming traffic, and Braye testified that when she started to make her U-turn there was no vehicle in the left lane coming towards her. According to Braye, as she was turning she saw out of her peripheral vision something coming and she "cut the wheel as much as [she] could[.]" She got out of the car and called 911, and her only conversation with Wilson was that he told her that his fiancée was calling 911. Braye testified that she never told Wilson, "I couldn't see you; so, I just went anyway[.]" According to Braye it took a long time for a police officer to arrive at the scene. Braye testified that she had called her parents in Port Neches, and that her parents arrived at the scene before the police.

Braye agreed that she told Officer Phan at the scene of the accident that she was making a U-turn and did not see the white Acura, but denied telling him, "Well, I couldn't see; so, I just pulled out anyway[.]" Braye testified that the officer did not go into a lot of detail with her about how the accident happened. Braye agreed that she had the duty to keep a proper lookout and the duty to yield the right-of-way to be absolutely sure and know it was safe before she turned, but she testified that she did not see the white Acura, that all she could say was she "did [her] best" to exercise a proper lookout, and that she felt that she did not act unsafely because "[i]t was clear when [she] looked[,]" and she "did what [she] needed to do to make a U-turn." Braye also agreed that she could have turned at a protected left turn, which would have been the safest place to make a left turn, but she agreed she chose a less-safe option by choosing to turn from a moving lane of traffic. Braye testified that she did the best that she could do, but she agreed it wasn't enough:

> [Plaintiff's Attorney:] Don't you wish you had moved up to the safer place?
>
> [Braye:] I mean, yes, sir.
>
> [Plaintiff's Attorney]: All right. Because if you had made that safety decision, just like if you had exercised a proper lookout, just like if you did not turn when it was unsafe, we wouldn't be here, would we?
>
> [Braye:] I just did the best that I could do.

6

[Plaintiff's Attorney:] All right. But it wasn't enough. It wasn't safe. It wasn't proper. Can we agree on that?

[Braye:] Of course we can.

Braye acknowledged that she pleaded guilty to the ticket for failure to yield the right-of-way and that she took defensive driving, but she said that she did not believe the accident was her fault because she believed that when she moved into the oncoming lane of traffic it was safe to make a U-turn. Braye testified that in making the U-turn on the day of the accident, and based on what she knew then, she believed she acted like an ordinary person would have done under the same or similar circumstances. According to Braye, during her deposition and trial, she was uncomfortable with opposing counsel's repeated attempts to get her to admit she was at fault because she did not believe she was at fault. Braye agreed that opposing counsel's questioning of her assumed that there was a car in the left lane when Braye made the U-turn, and Braye did not see a car in the left lane. According to Braye, if she had seen the white car coming right at her in the left lane like opposing counsel was assuming, she would not have made the U-turn. When asked whether Braye agreed that if she had just pulled out at the time of the impact, then the other vehicle had to have been pretty close, Braye responded, "I mean, it could be; or he could be changing lanes. I don't know."

7

After the Plaintiff rested, the trial court granted the Defendant a directed verdict on Plaintiff's gross negligence and malice claims. After deliberations, the jury answered "No" to the question, "Did the negligence, if any, of Kristin Braye proximately cause the occurrence in question?" The jury did not reach the damage questions. Braye filed Defendant's Motion for Entry of Final Judgment in accordance with the jury's verdict. Sanchez filed Plaintiff's Opposition to and Objection to Defendant's Motion for Entry of Final Judgment, arguing that the trial court record conclusively establishes Braye's negligence in proximately causing the collision, and Braye filed a response. The trial court signed a take-nothing final judgment in favor of Braye. Sanchez filed a motion for new trial, Braye responded, and the trial court denied Sanchez's motion for new trial by written order.

Appellate Issue

In Sanchez's sole appellate issue, she argues the trial court erred in denying her motion for new trial. According to Sanchez, the jury's answer to question one refusing to find that the negligence of Braye proximately caused the accident is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Sanchez also argues that this alleged error probably caused an improper judgment because of the substantial evidence that she suffered serious bodily injury in the motor vehicle crash.

Standard of Review and Analysis

We review the denial of a motion for new trial for abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). Under an abuse of discretion standard, legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion. *Lesikar v. Moon*, 237 S.W.3d 361, 375 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)); *see Carlin v. Carlin*, 92 S.W.3d 902, 905 (Tex. App.—Beaumont 2002, no pet.). In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence, and we will set aside the trial court's finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). As long as evidence falls within the zone of reasonable disagreement, we cannot substitute our judgment for that of the factfinder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

As the sole judge of the weight and credibility of the evidence, the jury was entitled to resolve any conflicts in the evidence and choose whom to believe. *See id.* at 819-20; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). In doing so, the jury could have believed Braye and reasonably

concluded that before making the U-turn she looked to make sure no oncoming traffic was in the left lane and that the left lane was clear when she began making the U-turn. The jury could have inferred from the testimony and the photographs at the scene that Wilson was changing lanes at the time of the collision. "The mere fact that a Court of Civil Appeals might have reached a different conclusion does not authorize us to substitute our judgment for the jury's findings." *Clark v. Cotten*, 573 S.W.2d 886, 888 (Tex. App.—Beaumont 1978, writ ref'd n.r.e.). The jury's failure to find facts of negligence vital to the appellant's recovery need not be supported by affirmative evidence. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex. 1973); *Clark*, 573 S.W.2d at 888.

On appeal, Sanchez relies on *Lechner v. Kelley*, 467 S.W.2d 652 (Tex. Civ. App.—Tyler 1971, writ ref'd n.r.e.), and *Dellolio v. Brown*, 399 S.W.2d 425 (Tex. Civ. App.—Houston 1966, no writ). Both *Lechner* and *Dellolio* involve a plaintiff's vehicle stopped at a red light and rear-ended by a defendant's vehicle. *See Lechner*, 467 S.W.2d at 652-53; *Dellolio*, 399 S.W.2d at 426. In *Lechner*, the Tyler Court of Appeals affirmed the trial court's granting of plaintiff's motion for judgment notwithstanding the verdict after the jury found no negligence by the defendant. 467 S.W.2d at 652, 655. In determining that the evidence conclusively established that the defendant was negligent, the Tyler Court of Appeals noted in *Lechner* that "[the

defendant's] admission that he was looking at business papers rather than in the direction he was traveling compels the conclusion that he failed to keep such a lookout as would have been maintained by a person of ordinary prudence under the same or similar circumstances proximately causing the collision." *Id.* at 654-55. In *Dellolio*, the First District Court of Appeals reversed the trial court's final judgment based on the jury's verdict that plaintiffs take nothing in their negligence suit. 399 S.W.2d at 426, 428. In that case, the defendant testified that she was about a car-length away from Dellolio's vehicle when she first saw it, that Dellolio's vehicle was stopped at the light, that the defendant assumed the light was red, and that she was familiar with the signal. *Id.* at 427. In finding the jury's answer in acquitting the defendant of failure to keep a proper lookout so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, the First Court of Appeals noted that the only evidence in the record shows that the red light could be seen at least half a block away, the defendant did not say the incline on the street prevented her from seeing Dellolio's car or the light, and the defendant knew the light was at the intersection but did not testify that she looked for the signal. *Id*. We find both cases are inapposite to the facts in the present case.

Based upon the record before us, we conclude that the jury's failure to find negligence was not so weak, nor so against the great weight and preponderance of

the evidence, as to render the verdict clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, the trial court did not abuse its discretion in denying Sanchez's motion for new trial. Because we have concluded that the trial court did not abuse its discretion in denying Sanchez's motion for new trial, we need not address Sanchez's remaining argument about her alleged injuries. *See* Tex. R. App. P. 47.1. We overrule Sanchez's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 4, 2018
Opinion Delivered September 13, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.

12